J-A30032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| H.M., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.D., | |
| Appellee | No. 1664 EDA 2014 |

Appeal from the Order Entered June 3, 2014
in the Court of Common Pleas of Philadelphia County
Domestic Relations at No.: OC1001255

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED DECEMBER 05, 2014**

Appellant, H.M. (Father), appeals from the order of the Court of Common Pleas of Philadelphia County entered June 3, 2014.  In pertinent part, the order continued the custody arrangements previously ordered on June 20, 2011: Father and Appellee, J.D. (Mother), shared legal custody of their child, C.E.M. (Child); Mother continued to have primary physical custody of Child.  Father has partial physical custody as well as a specific schedule of custodial time during holidays.  Father chiefly argues the trial court disregarded his change of circumstances.  We affirm on the basis of the trial court's opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court described this litigation as "a tumultuous custody battle." (Trial Court Opinion, 7/09/14, at 1). The procedural history is extended and convoluted. We will recount only the most significant details relevant to this appeal.

Child was born in July of 2009. The parties are married but separated when Mother filed for divorce from Father on April 23, 2010. Father filed a complaint for custody of Child on July 16, 2010.[1] After a hearing on June 20, 2011, the trial court entered a final order that granted the parties shared legal custody, granted Mother primary physical custody, and granted Father partial physical custody with a schedule of holidays.[2]

Father subsequently purchased a home, and reorganized his employment duties so he could work at home with more hours available for parenting. He filed a petition to modify custody on August 9, 2012, and a

_____

[1] The trial court entered an interim order pending a full trial originally scheduled for February 4, 2011. The court rescheduled its hearing from February 4, 2011, to June 20, 2011, after Mother filed a motion for a protracted hearing, on December 28, 2010.

[2] For completeness we also note that on April 23, 2012, the parties began a protracted argument before the trial court over whether Child should undergo a tonsillectomy and adenoidectomy. Mother chose to follow Child's doctor's advice to have the surgery performed; Father opposed the surgery and filed an emergency motion to prevent it. After a number of competing filings and continuances, the trial court cancelled the trial on the question when the parties both signed consents to the surgeries.

motion for a protracted hearing, on August 13, 2012. The trial court scheduled a protracted hearing on Father's petition for June 18, 2013.

Father also filed a motion on August 7, 2012 calling for the recusal of the judge of the trial court. The trial court denied the motion on August 14, 2012.[3] The trial court scheduled the hearing on Father's petition to modify for September 5, 2012, but continued it to September 18, 2012, at Father's request.

Father's attorney filed a petition to withdraw his representation on December 4, 2013. The trial court granted the petition on December 9, 2013. Based on Father's assertion that he was prejudiced as a result of his attorney's withdrawal, the court continued the hearing on his petition to modify to the next available date, June 3, 2014. Mother and Father testified at that hearing. The trial court entered its order on June 3, 2014. Father timely filed his notice of appeal and statement of errors on June 9, 2014.

Father presents four questions for our review:[4]

1. Whether the trial court's analysis is deficient and erred in its "rationle decidendi" [sic][5] when it found there had been no

---

[3] Father appealed the denial of his recusal motion. This Court deemed Father's appeal interlocutory and quashed it on October 6, 2012.

[4] Father incorrectly labels his statement of questions involved as "Order or Other Determination in Question." (**See** Father's Brief, at 2).

[5] In his brief, Father adds "*ratio decidendi*" ["reason for deciding"] in a footnote, apparently acknowledging the trial court's correction of the misspelling in his citation to the Latin phrase. (**See id.**).

change in circumstance since entry of its Order in June 2011 when Father, subsequent thereto, purchased a home to provide more stability and continuity for Child, changed his schedule to work from home, thereby maximizing potential parent/child contact, and increased his network of support to help with Child[?]

2. Whether the trial court erred and abused its discretion in failing to grant Father's Petition for Modification pursuant to 23 Pa.C.S.A. §5338 when it did not consider all of the factors in 23 Pa.C.S.A. §5328 and found there had been "no substantial changes in circumstances" when the standard is "best interests of the child"[?]

3. Whether the trial court erred when it did not consider the **current** circumstances and based its decision partially upon testimony from approximately one year earlier in contravention to ***Kozlowski v. Kozlowski***, 542 A.2d 995 (Pa. Super. 1987)[?] (emphasis in original) [sic]

4. Whether the trial court erred and abused its discretion by relying too heavily on the testimony of a five-year-old child in rendering its decision[?]

(Father's Brief at 2) (footnotes omitted, except as noted) (emphasis in original).

Our scope and standard of review is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citations omitted).

> In addressing the trial court's discretion, this Court has observed:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

Additionally,

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**S.M. v. J.M.**, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting **Robinson v. Robinson**, 645 A.2d 836, 838 (Pa. 1994)).

Here, our review of the record in this matter supports the trial court's findings and conclusions of law. Our review also confirms that the trial court properly exercised its discretion.

Accordingly, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues that Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (**See** Trial Court Opinion, 7/09/14, at 7-15) (concluding that: (1) while Father made several changes to his lifestyle to accommodate the needs of Child, it was nonetheless still in the best interest of Child for Mother to retain primary physical custody with liberal partial physical custody for Father; (2) the trial court properly considered all relevant factors pursuant to 23 Pa.C.S.A. § 5328 in rendering its award of custody; (3) the trial court's decision is not contravened by the holding in **Kozlowski**, **supra**, which is distinguishable on its facts; and (4) the trial court properly considered the testimony of Child, where it was the province of the court as fact finder to

weigh the evidence presented and assess credibility). Accordingly, we affirm on the basis of the trial court's opinion.

     Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/2014

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| H█████ M███████, | : | COURT OF COMMON PLEAS, |
| Appellant | | PHILADELPHIA COUNTY, PA |
| | | |
| v. | : | IN CUSTODY 0C1001255 |
| | | |
| J█████ D██████ | : | NO. 1664 EDA 2014 |
| Appellee | | |

**OPINION**

Appellant, H█████ M██████ (hereinafter "Father"), appeals from a custody order dated

June 3, 2014 entered by the Honorable Holly J. Ford. This Court reinstated the June 20, 2011

Order,[1] which granted Father and Appellee, J█████ D█████ (hereinafter "Mother") shared legal

custody of the minor child, C (born July 23, 2009). Mother was awarded primary physical

custody of C with Father to have liberal partial physical custody. In addition, a specific and

comprehensive schedule for custodial time during holidays and the child's birthday was

delineated. The June 3, 2014 Order gave rise to this appeal.

**FILED**

**JUL - 9 2014**

**CLERK OF FAMILY COURT**

**Procedural History** (*see docket*)

The parties have been engaged in a tumultuous custody battle since July 16, 2010 when

Father, *pro se*, filed a complaint for primary physical and legal custody. Father also filed a

motion for expedited relief on August 9, 2010, which was granted on September 24, 2010. The

Honorable Diane Thompson entered an interim order pending a full trial on February 4, 2011

---

[1] The court ordered the June 20, 2011 Order to stand with the exception that the child will be graduating from Busy Bee Daycare in June 2014.

1

granting the parties shared legal custody of C. Mother was awarded primary physical custody with Father to have partial physical custody every Tuesday and every other weekend.

On November 4, 2010, Father filed a petition for contempt. Counsel for Mother filed a motion for a protracted hearing on December 28, 2010. On December 29, 2010, Father filed another contempt petition. Mother's motion for a protracted hearing was granted on January 20, 2011; the February 4, 2011 trial was cancelled and the matter was rescheduled for June 20, 2011. On May 25, 2011, counsel for Mother filed an answer and counterclaim to Father's complaint for custody.

After a protracted hearing on June 20, 2011, Father's two outstanding contempt petitions were withdrawn at his request, and the Honorable Holly Ford entered a final order awarding Mother primary physical custody with Father to have partial physical custody; the parties were to share legal custody of C.

On April 23, 2012, counsel for Mother filed a petition for special relief requesting permission to obtain a tonsillectomy and adenoidectomy for the child at the recommendation of Dr. Rizzi (C's ear, nose and throat doctor). Judge Ford entered an order on May 2, 2012 directing Father to obtain a second opinion regarding the child's need for the procedures; if the second opinion reinforced Dr. Rizzi's recommendation, the child was to undergo the surgeries.

On May 8, 2012, Father filed a notice of appeal,[2] and on June 7, 2012, Father filed an emergency motion to stay the May 2, 2012 Order authorizing C's surgeries. On June 11, 2012, the Superior Court remanded the matter at Judge Ford's request, and a trial was scheduled for September 5, 2012.

---

[2] Appeal no. 1377 EDA 2012.

Father filed a motion for Judge Ford's recusal on August 7, 2012. On August 9, 2012, Father filed a petition to modify, and on August 13, 2012, Father filed a motion for a protracted hearing. Father's motion for recusal was denied on August 14, 2012.

On August 23, 2012, Judge Ford entered an administrative order continuing the scheduled September 5, 2012 trial, at Father's request, to September 18, 2012. Father's motion for a protracted hearing was referred to Judge Ford; the trial date of September 18, 2012 remained with additional trial time to be given at the court's discretion.

On August 31, 2012, Father filed a notice of appeal of the August 14, 2012 Order (Judge Ford's denial of Father's motion for recusal).[3] This Court filed a memorandum in lieu of an opinion on September 17, 2012, as Father's appeal involved an interlocutory issue.

Father filed a motion for special relief on September 18, 2012 requesting that his paramour be permitted to pick up and drop off C when necessary.

After a trial on September 18, 2012, Judge Ford entered an order directing the parties to schedule a sleep study for C, which would play a role in determining whether or not a tonsillectomy and adenoidectomy were necessary. The matter was relisted for December 19, 2012. On September 21, 2012, Father filed a motion for a protracted hearing.

Father filed a motion to quash his pending appeal with the Superior Court on October 3, 2012, which was granted on October 9, 2012.

On November 13, 2012, the Honorable Angeles Roca entered an order granting Father's motion for special relief filed on September 18, 2012.

On November 16, 2012, Father filed two contempt petitions (the first alleging Mother violated the June 20, 2011 Order and the second alleging that Mother violated the September 18, 2012 Order) and a petition for reconsideration of Judge Roca's November 13, 2012 Order.

---

[3] Appeal no. 2340 EDA 2012.

3

Due to the complex nature of the case and the volume of testimony heard by Judge Ford in particular, all future motions and petitions filed in this matter were assigned to Judge Ford on November 20, 2012.

On November 30, 2012, Judge Ford entered an administrative order cancelling the December 19, 2012 hearing as both parties signed consent forms for C to undergo the disputed surgeries. On November 30, 2012, Judge Ford also granted Father's motion for a protracted hearing and scheduled all outstanding petitions for June 18, 2013.

Father filed a notice of appeal of Judge Roca's November 13, 2012 Order on December 11, 2012. On January 9, 2013, Judge Roca entered an order granting in part and denying in part Father's motion for reconsideration.

On May 29, 2013, counsel for Father filed a motion *in limine* requesting the court to bar any of Mother's witnesses for which an address was not provided to Father or his attorney. (*See* N.T. p.4, l.6 – p. 14, l.1.) The court denied the motion, and following a protracted hearing on June 18, 2013, the matter was relisted as a semi-protracted hearing on December 9, 2013 specifically for cross-examination of Mother, interview of the child, and rebuttal witnesses.

Father filed a motion for special relief on September 6, 2013 claiming that Mother made defamatory statements about Father to several of C's doctors. On November 4, 2013, Father filed a counter affidavit objecting to Mother's proposed relocation. Father's attorney filed a petition to withdraw his appearance on December 4, 2013, which was granted a rule to show cause on December 5, 2013 and consolidated with the outstanding petitions listed for a semi-protracted hearing on December 9, 2013.

After the hearing on December 9, 2013, Father's counter affidavit to Mother's proposed relocation was dismissed as there was no establishment of a relocation requirement under the

4

statute, 23 Pa. C. S. § 5337.[4] The court granted Father's attorney's motion to withdraw, and based on Father's assertion that he would be prejudiced as a result, the remainder of Father's outstanding petitions were continued for trial on June 3, 2014.

After retaining new counsel, Father withdrew one of his two outstanding contempt petitions filed November 16, 2012 and his motion for special relief filed September 6, 2013 at the bar of the court on June 3, 2014. Both Father's petition to modify filed August 9, 2012 and his remaining petition for contempt filed November 16, 2012 were denied after the semi-protracted hearing. The court ordered the June 20, 2011 Order to stand.

On June 9, 2014, counsel for Father filed a notice of appeal and a concise statement of errors complained of on appeal (hereinafter "Statement") simultaneously. The instant appeal is classified as a Children's Fast Track Appeal.

**Statement of Law**

Child custody cases are reviewed under a specific and well-defined standard; the paramount inquiry and "polestar" of analysis is the best interest of the child. *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). The "best interest" standard considers "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* In addition, the trial court must consider all of the relevant factors set forth in Pennsylvania's custody statute, 23 Pa. C. S. § 5328(a) (2012), in determining an award of custody. These factors are as follows:

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

---

[4] Mother moved 0.8 miles closer to Father, remaining in the City and County of Philadelphia.

5

3. The parental duties performed by each party on behalf of the child.

4. The need for stability and continuity in the child's education, family life and community life.

5. The availability of extended family.

6. The child's sibling relationships.

7. The well-reasoned preference of the child, based on the child's maturity and judgment.

8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

11. The proximity of the residences of the parties.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangements.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

14. The history of drug or alcohol abuse of a party or member of a party's household.

15. The mental and physical condition of a party or member of a party's household.

16. Any other relevant factor.

*Id.*

Although the scope of appellate review is broad, it is "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Arnold*, 847 A.2d at 677.

6

## Errors Complained of on Appeal

Father contends that this Court erred in its entry of the June 3, 2014 Order for the following reasons:

1. **The trial court's analysis was deficient, and it erred in its "rationle decidendi"[5] [*sic*] when it found there had been no change in circumstance since entry of its order in June 2011 when Father, subsequent thereto, purchased a home to provide more stability and continuity for the child, changed his schedule to work from home, thereby maximizing potential parent/child contact, and increased his network of support to help with the child.**

Father's assertion incorrectly suggests that, had the court found there was indeed a change in circumstances, custody of the child would therefore automatically be transferred to Father. However, "[c]hanged circumstances are no longer required for a court to review child custody [o]rders." *Hutchinson v. Hutchinson*, 549 A.2d 999, 1001 (Pa. Super. 1988). As previously discussed, the paramount concern and ultimate consideration in a custody matter is the best interest of the child. *See Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). A petition to modify custody therefore "requires the court to inquire into the best interest of the child regardless of whether a "substantial" change in circumstances has been shown." *Karis v. Karis*, 518 Pa. 601, 607-08 (1988). The Superior Court has made abundantly clear that the "party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." *Johns v. Cioci*, 865 A.2d 931, 937 (Pa. Super. 2004).

Father filed a petition to modify on August 9, 2012 requesting primary physical and shared legal custody of C; therefore, it was Father's burden to show that granting his request would be in C's best interest. After carefully weighing the testimony of both parties, the witness and the child and considering all of the relevant evidence, this Court determined that Father failed to meet his burden and found no reason to change the existing custody arrangement. (The

---

[5] This Court presumes that Father intends to cite "*ratio decidendi*" in his first contention, which refers to the rationale for the court's decision in a specific case.

court's specific findings with regard to the custody factors under 23 Pa. C. S. § 5338(a) are discussed under Father's second contention, *infra*.) While the court recognizes that Father made several changes to his lifestyle to accommodate the needs of the child, it ultimately determined that it was nonetheless in C's best interest for Mother to retain primary physical custody of the four-year-old child and for Father to have liberal partial physical custody in order to help promote stability and continuity in C's life..

2. **The trial court erred and abused its discretion in failing to grant Father's petition for modification pursuant to 23 Pa. C. S. § 5338 when it did not consider all of the factors in 23 Pa. C. S. § 5328 and found there had been "no substantial changes in circumstances" when the standard is "best interests of the child."**

Upon petition, under Pennsylvania's Child Custody Act, "a court may modify [an existing] custody order to serve the best interest of the child." 23 Pa. C. S. § 5338(a). A custody modification "is not warranted merely because one parent is unhappy with the existing arrangement" and the Superior Court has "repeatedly...emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest." *Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004).

As previously discussed, in determining the child's best interest, the court must consider all of the relevant factors enumerated in Pennsylvania's custody statute, 23 Pa. C. S. § 5328(a). Set forth below are the court's findings of fact with regard to the sixteen custody factors, which, in the aggregate, form the basis for an award of primary physical custody to Mother.

1. *Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.*

No evidence was presented to suggest that either party had ever proactively inhibited the other's custody. In fact, Mother testified that Father "frequently" requested to swap custodial time with her due to his travel schedule for his former job and the parties were able to

accommodate one another. (N.T. 6/18/13, p.264, l.23 – p.265, l.10.) However, the court found that Father harbored a significant amount of hostility towards Mother, which was not apparently reciprocated, and it was clear by the demeanor of the parties that Mother appeared more likely to encourage contact and interaction between C and Father. (*See, e.g.,* N.T. 6/18/13, p.263, l.13-24 (where Mother testified that Father ignores her during exchanges of the child while she attempts to make polite conversation); N.T. 6/18/13, p.27, l.10-16 (where Father provided inadmissible commentary as to Mother's actions); N.T. 6/18/13, p.264, l.23 – p.265, l.10 (where Mother testified she accommodated Father several times when he requested to switch custodial days).)

2. *The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.*

This factor was not applicable in the case at bar.

3. *The parental duties performed by each party on behalf of the child.*

Both parties are equally capable of performing parental duties on behalf of the child and both are adequate caretakers. However, C has spent his entire life living primarily with Mother, who performs the majority of the daily parental duties, including C's laundry, cooking, and bathing. (N.T. 6/18/13, p.270, l.20 – p.271, l.22; *see also* Factor #4, below.)

4. *The need for stability and continuity in the child's education, family life and community life.*

As articulated by the Superior Court, "the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements." *Jackson v. Beck,* 858 A.2d 1250, 1252 (Pa. Super. 2004). C, at nearly five years old, has been living primarily with Mother since he was approximately a year and a half. Not only is C happy with the arrangement, but the court found that C is doing extremely well. (N.T. "Child Testimony" p.8, l.4-12; N.T. 6/18/13,

9

p.263, l.9-14.) Nothing was presented at trial to justify a disruption in custody possibly jeopardizing C's happiness and well-being.

5. *The availability of extended family.*

C's paternal grandparents reside in New Zealand, and Father testified adamantly that he wants them to have no involvement with C at all, based on issues he experienced while living with them as a child. (N.T. 6/18/13, p.167, l.19 – p.168, l.10.) Father has had "almost nothing to do with them in 10 years." (N.T. 6/18/13, p.168, l.6-7.)

Conversely, Mother and C travel to Absecon, New Jersey "frequently" to visit C's maternal grandparents on weekends. (N.T. 6/18/13, p.268, l.16-24.) Mother testified that her parents and C are "very, very, very close" and have been since he was a baby. (N.T. 6/18/13, p.269, l.10-14.) In addition, Mother's sister has four children who are often present at the maternal grandparents' home on weekends as well. (N.T. 6/18/13, p.269, l.6; p.270, l.2-4.) Mother stated that C spends a "great deal" of time with them and has developed "very strong, wonderful relationship[s] with his cousins." (N.T. 6/18/13, p.270, l.4-5; p.269, l.15-18.) Accordingly, the court found that not only was Mother's side of the family more "available," but Mother was much more likely to encourage continuing contact and foster relationships between the child and his extended family.

6. *The child's sibling relationships.*

This factor was not applicable in the case at bar.

7. *The well-reasoned preference of the child, based on the child's maturity and judgment.*

Judge Ford interviewed C in the privacy of her Chambers, at which time the child expressed a desire for the custody arrangement to remain the same. The court found C to be a very intelligent and creative four-year-old. C stated he likes seeing a lot of both parents and likes

things the way they are. (N.T. "Child Testimony" p.8, l.4-12.) The court further inquired as to what C would do differently "about seeing Mommy and Daddy" if he could change anything he wanted with a magic wand; C replied, "[k]eep it the same." (N.T. "Child's Testimony" p.18, l.21 – p.19, l.6; N.T. 6/3/14, p.61, l.13-18.) See Father's fourth contention, *infra*, for further discussion regarding weight of the child's testimony.

8. *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.*

No evidence was presented to suggest either party has made active attempts to turn the child against the other party.

9. *Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.*

Both parties have maintained a strong relationship with the child and are equipped to provide for C's emotional needs.

10. *Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.*

Both Mother and Father are equally willing and able to provide for all of C's needs.

11. *The proximity of the residences of the parties.*

Both parties live in the City and County of Philadelphia and reside fairly close to one another.

12. *Each party's availability to care for the child or ability to make appropriate child-care arrangements.*

Both parties work flexible hours, but during their periods of unavailability, C attends Busy Bees Daycare. (N.T. 6/18/13, p.262, l.14-17.) As a healthcare consultant, Mother testified that she is able to arrange her work schedule around C's schedule. (N.T. 6/18/13, p.267, l.9-19.) Father recently accepted a new job allowing him to work from home from 4 a.m. until about

11

noon. (N.T. 6/18/13, p.95, 1.5-8.) Father's non-traditional hours allow him to drop C off at daycare and pick him up during his custodial time. (N.T. 6/18/13, p.100, 1.14 – p.101, 1.1.) While Mother works locally, Father has traveled three times in the past six months for his new job. (N.T. 6/18/13, p.267, 1.15; p.100, 1.6-13.) Based on the foregoing, both parties have managed to craft their work schedules with the child in mind and have made appropriate arrangements for C during their periods of unavailability.

13. *The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.*

There is a moderate level of conflict between the parties, and Father, as evidenced by the docket, is extremely litigious. Mother testified that she makes an effort to say hello and goodbye to Father during exchanges of the child, but Father often ignores her and rushes C out of the building. (N.T. 6/18/13, p.263, 1.14-24.) However, when Father requested to swap custodial time with Mother on several occasions to accommodate his travel schedule, the parties were able to cooperate and make arrangements. (N.T. 6/18/13, p.264, 1.23 – p.265, 1.10.)

14. *The history of drug or alcohol abuse of a party or member of a party's household.*

This factor was not applicable in the case at bar.

15. *The mental and physical condition of a party or member of a party's household.*

Neither party has any mental or physical condition that would inhibit them from properly caring for C.

16. *Any other relevant factor.*

**3. The trial court erred when it did not consider the current circumstances and based its decision partially upon testimony from approximately one year earlier in contravention of *Kozlowski v. Kozlowski*, 362 Pa. Super. 516, 524 A.2d 995 (1987).[6]**

---

[6] The citation for *Kozlowski* contained in Father's Statement is incorrect and leads to an irrelevant workers' compensation case. The correct citation is given herein.

Father cites *Kozlowski* in support of his contention; however, the facts differ greatly from those in the case at bar. In *Kozlowski*, the Superior Court reversed the trial court's order granting primary physical custody to Father because the award of custody was clearly intended as a sanction imposed for Mother's contemptuous behavior rather than based on a determination as to what was in the child's best interest. 362 Pa. Super. 516. A custody hearing was held on October 23, 1984, but the case fell through the cracks and the trial court failed to issue an order until 1986 when it also ruled on an outstanding contempt petition. *Id.* at 519. As the testimony from which the trial court drew its conclusions was "almost two years old," the appellant in *Kozlowski* raised the issue of staleness on appeal. 362 Pa. Super. 516. The Superior Court made no definitive finding as to whether the record was stale but stated that because a custody decision "rests upon what is currently in the children's best interest, it must be based upon an up-to-date record." *Id.* at 522 (emphasis omitted).

In the instant case, due to the complexity of the litigation and the number of petitions filed and scheduled to be heard, one full day's worth of testimony (during the June 18, 2013 hearing) was insufficient for the court to make a custody determination; thus, the December 9, 2013 semi-protracted hearing was scheduled.[7] Neither party objected; in fact, counsel for Father requested a relisting of the case in order to perform his entire cross examination of Mother all at one time. (N.T. 6/18/13, p.328, l.8-25.) The court acquiesced but warned counsel and the parties that the waiting period for a relisting of the matter could be lengthy due to the backlog of cases in family court. (N.T. 6/18/13, p.329, l.1-7.) In the meantime, Father's attorney filed a motion to withdraw as counsel. Rather than securing new counsel for the December 9, 2013 hearing, Father requested a continuance at the bar of the court, asserting that he would be prejudiced if he

---

[7] Due to the volume of custody cases in Philadelphia County, December 9, 2013 was the next available semi-protracted hearing date.

were forced to proceed without an attorney. (*See* Order dated 12/9/13; N.T. 12/9/13, p.3, 1.6-15.) Accordingly, the court relisted the case for the next available date, June 3, 2014. While it is true that almost a year elapsed between the initial hearing and the entry of the order, the circumstances demanded it. Father's attorney initially requested the first relisting, and Father actually requested the second relisting of the case. He obviously did not object to either of the two continuances of the case.

**4. The trial court erred by relying too much upon the testimony of the five-year-old child in rendering its decision.[8]**

It is well-settled that "[t]he credibility of witnesses and the weight to be accorded to their testimony is for the trial judge, sitting without a jury." *Krobot v. Ganzak*, 194 Pa. Super. 49, 52 (1960). In addition, as stated repeatedly in this Opinion, a trial court must consider all of the relevant factors set forth in Pennsylvania's custody statute to determine the child's best interest. One of these factors, as previously discussed, is "the well-reasoned preference of the child." 23 Pa. C. S. § 5328(a). The statute takes care to mandate that this preference be based on the child's "maturity and judgment" rather than age. Our Supreme Court has articulated that "[a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest." *McMillen v. McMillen*, 529 Pa. 198, 203 (1992). The appellate courts further acknowledge that "[t]he weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." *Id.*

This court interviewed the child for the first time at the June 3, 2014 hearing and found him to be not only competent but incredibly intelligent and forthcoming for his age. (N.T. "Child Testimony" p.4, 1.13 – p.6, 1.4.) C expressed a desire for the custody arrangement to

---

[8] Father's Statement labels the child as five years old, but at the time of trial on June 3, 2014, C was four years old.

14

remain the same, which, when considered in combination with the remaining custody factors, the court found to be in C's best interest. (N.T. "Child Testimony" p.8, 1.4-22.)

## Conclusion

Ultimately, after hearing testimony from both parties, the witness and the child, reviewing the relevant evidence, and in consideration of all of the custody factors under 23 Pa. C.S. 5328(a), this Court found it was in C's best interest for the June 20, 2011 Order to remain in effect. The errors of which Father complains on appeal lack any basis in the evidentiary record, applicable statutes or case law. It is respectfully requested that the findings of the trial court be affirmed.

**BY THE COURT:**

**Dated:** July 8, 2014

_____
**HOLLY J. FORD,**              **J.**

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 08 2014
FIRST JUDICIAL DISTRICT OF PA
USER I.D.: