811 A.2d 621 (2002)
S.M., Appellee,
v.
J.M., Appellant.
Superior Court of Pennsylvania.
Argued June 11, 2002.
Filed November 15, 2002.
*622 Charles A. Banta, Easton, for appellant.
Stephen T. Mogck, Trexlertown, for appellee.
Before: STEVENS, TAMILIA, and KELLY, JJ.
STEVENS, J.
¶ 1 Mother appeals from a custody decision of the Court of Common Pleas of Lehigh County. We affirm.
¶ 2 Mother and Father were married on January 25, 1992, and are the parents of W.M., born on June 29, 1994, and E.M., born on March 4, 1997. On April 26, 1997, shortly after E.M.'s birth, the parents separated, and on July 22, 1997, Father filed for divorce, seeking custody of the children. An August 8, 1997 interim custody order granted shared legal custody to the parties, primary physical custody to Mother, and partial physical custody to Father. The custody arrangement was followed by a comprehensive property settlement, support, and custody agreement, which was made an order of the court on September 23, 1997; thus began what has become a contentious battle between the parties.[1] Following the September 23, 1997 order, Mother filed a petition for special relief and change of jurisdiction, and a contempt petition, and Father filed modification and contempt petitions. Hearings on the petitions were held on November 30, 1998, January 29, 1999, March 2, 1999, and June 16-17, 1999.
¶ 3 The lower court filed an order on June 23, 1999, concerning the modification and contempt petitions, which provided Mother with an opportunity to raise additional contempt issues and listed the matters for hearing.[2] The June 23, 1999 order also directed the parents and the children to undergo a psychological evaluation by Ronald Esteve, Ph.D. Pursuant to the June 23, 1999 order, Mother filed a contempt petition raising additional allegations, and Father filed an answer thereto and an amended petition for contempt. The lower court also filed an order on June 24, 1999, finding that the agreements memorialized by the September 23, 1997 order are valid and enforceable, denying Mother's petition for special relief, and denying Mother's request for change of jurisdiction.
¶ 4 Dr. Esteve performed the court ordered evaluations, and submitted a forty-four-page *623 report on November 4, 1999. Previously, on January 22, 1999, Joseph Wright, Ph.D., had submitted a psychological evaluation report of Mother on her behalf.
¶ 5 Hearings were held on the custody, contempt, and modification petitions, at which time numerous witnesses testified. After the hearings, the lower court filed three orders on December 28, 2000,[3] granting Father's modification and contempt petitions, and denying Mother's contempt petitions. As a result of the December 28, 2000 order pertaining to custody, Father is currently the primary physical custodian of the children, with Mother permitted periods of partial physical custody.
¶ 6 Mother has appealed the court's custody decision, alleging that the lower court erred in awarding primary physical custody of the two minor children to Father.[4] See Mother's brief at xiv. Mother summarizes her argument as follows:
The court blindly accepted the testimony of its own expert witness [Dr. Esteve] without considering the overwhelming evidence that that witness was biased and in so doing biased its own judgment, and therefore the judgment exercised by the court was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of the record, and therefore discretion was abused.
Mother's brief at 7. We do not agree.
¶ 7 Child custody cases are reviewed by this Court under a well-settled standard:
[O]ur paramount concern and the "polestar of our analysis in this case, and a legion of prior custody cases, [is] the best interests of the child." The "best interests" standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.
Sawko v. Sawko, 425 Pa.Super. 450, 625 A.2d 692, 693 (1993) (citations omitted). Further, "on the issues of credibility and weight of the evidence, we defer to the findings of the trial judge." Andrews v. Andrews, 411 Pa.Super. 286, 601 A.2d 352, 353 (1991), affirmed by 533 Pa. 354, 625 A.2d 613 (1993) (citation omitted).
The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
Robinson v. Robinson, 538 Pa. 52, 57, 645 A.2d 836, 838 (1994).
*624 ¶ 8 Mother asserts that because Dr. Esteve was appointed by the court, "it might be expected that the court had confidence in him and might lend him greater credibility than to a stranger," and that because Dr. Wright testified on behalf of Mother, "it might be expected that the judge would give him less credibility than the witness appointed by the court." Mother's brief at 10. Mother provides no support for this charge, and we find no evidence that the distinguished trial judge, the Honorable James Knoll Gardner, shirked his duty of judicial impartiality in the fashion alleged. Mother, without a factual basis, claims that Judge Gardner "apparently failed to examine the testimony of the two experts and review them critically, but instead, apparently accepted the testimony of its own witness blindly." Mother's brief at 10-11. Again Mother has provided no support for this allegation, and we find it far from "apparent" that Judge Gardner acted "blindly" in any regard. Quite to the contrary, the record shows that Judge Gardner thoroughly examined the testimony of not only the two expert witnesses, but also the parties, their sons, and various other persons involved in the case. Lower court opinion filed 12/28/00 at 26-28, 41-47, 51.
¶ 9 Finally, Mother insists that
[I]n light of the overwhelming evidence... with regard to the bias of its own witness, it can only be assumed that the judgment exercised by the court is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence of record, and therefore discretion is abused.
Mother's brief at 12. Again, the record belies Mother's claim. Dr. Esteve and Dr. Wright testified to their divergent findings. It is the duty of the lower court to review such testimony and make a credibility determination. Judge Gardner did so in this case, and Mother has failed to support her claim that his decision was based on prejudice, bias, or ill will. Because the record reflects that the trial court's consideration of the best interests of the children was careful and thorough, and because we find no abuse of discretion on the part of the trial court, we affirm the custody order in question. Robinson, supra, Sawko, supra.
¶ 10 Affirmed.
¶ 11 TAMILIA, J., files a concurring statement.
TAMILIA, J., Concurring.
¶ 1 I vote to join the proposed Opinion. In joining this Opinion, I would also adopt the Opinion of the learned trial judge, James Knoll Gardner, P.J. Judge Gardner, in a 76 page Memorandum Opinion, exhaustively reviewed the facts of this case, correctly applied the law and justified the weight and credibility given to the various witnesses, most particularly, the psychologists who testified on behalf of each of the parties. In particular, I agree with Judge Gardner's decision not to impose sanctions on appellant for her violation of various visitation and other court Orders. The change of primary custody of the children from mother to father serves to correct the underlying problem and the need for coercive sanctions to bring about mother's cooperation is obviated while further sanctions would simply be punitive.
NOTES
[1] The numerous petitions filed by the parties are chronicled in the lower court's comprehensive seventy-six-page opinion of June 15, 2001.
[2] The equitable distribution issues were referred to an Equitable Distribution Master for hearing and processing, and the lower court subsequently filed an October 21, 1999 order on the recommendation of the equitable distribution master.
[3] The orders are dated December 27, 2000.
[4] It is clear from Mother's appellate brief that she no longer disputes either of the two December 28, 2000 orders concerning contempt. Mother's brief at v-xiv.