J-A04042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.D.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.D., | |
| Appellant | No. 1022 WDA 2015 |

Appeal from the Order Entered January 5, 2015
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. NO. 12-90161-C

| | |
|---|---|
| J.D.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.D., | |
| Appellant | No. 1165 WDA 2015 |

Appeal from the Order Entered June 29, 2015
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. NO. 12-90161-C

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 2, 2016**

M.D. ("Mother") appeals from the custody orders entered by the trial court on January 5, 2015, and June 29, 2015.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

The parties hereto, [M.D. ("Mother")] and [J.D.D. ("Father")] are the natural parents of one child, [("Child") (Born in 2010)]. Mother and Father were married on June 10, 2010 and separated on August 30, 2013. The divorce matter between the parties is still pending. Child is the only child of issue to the marriage. Mother also has four other children, [E.G.] (Age 17), [H.G.1] (Age 15), [H.G.2] (Age 13) and [A.G.] (Age 13), as a result of her previous relationship with [K.G.].

A complaint for custody was filed by Father on September 13, 2013, averring that he is better able to provide a stable, structured, loving and caring environment for Child. Father also expressed concerns of leaving Child alone with Mother's oldest son, [E.G.], due to his history of sexual abuse towards his sister, [H.G.2].[1] Through an Order of Court dated November 18, 2013, the parties were ordered to undergo custody evaluations. . . .

> [1] An investigation was conducted by Armstrong County's Children and Youth Services which resulted in a conclusion that the case was "substantiated."

Numerous Petitions for Contempt and Special Relief have been presented to the court in the custody matter, as well as the parties' divorce matter. There is also a history of cross-PFAs between the parties, which have all since been dismissed. Over the past year, the parties have engaged in constant litigation and have rarely been able to cooperate. The issues of contention have included discussing adult custody issues around Child, allegations of sexual abuse and how to deal with Child's behavioral issues. Most recently, allegations of sexual abuse, which allege that [H.G.2] was sexually molesting Child, were made and presented to the Court.

A Custody Trial was scheduled for August 25 and 26, 2014. After the presentation of a Motion to Continue to allow Butler County Children and Youth Services ("CYS") to conduct their investigation [of the allegation of abuse by H.G.2 against Child], an Order of Court was issued on August 25, 2014 granting said Motion. The same Order of Court also directed Mother's custody time to take place two times per week for two hours, either supervised or in a public setting. Mother was not permitted any overnights with Child. Lastly, the same Order prohibited Mother's oldest son, [E.G.], from being around Child at any time,

- 2 -

for any reason. The five day custody trial was held on October 27, 28, and 29, 2014, and November 24 & 25, 2014.[1]

Amended Memorandum Opinion and Order of Court, 6/29/15, at 1-2.

Following trial, an order of court dated January 2, 2015 and entered January 5, 2015, was issued granting Mother and Father shared legal custody. Father was awarded primary physical custody with Mother having visitation. On January 15, 2015, Father filed a petition for special relief, which resulted in change of exchange times for Mother's custodial weekends. Mother filed a motion for reconsideration that was dated January 16, 2015, and was entered on the docket on February 4, 2015.

Mother filed a notice of appeal and a Pa.R.A.P. 1925(b) statement on February 4, 2015. On the same day, the trial court entered an order granting Mother's motion for reconsideration of the January 5, 2015 order,

_____

[1] The trial court opinion also included, *inter alia*, the following relevant factor:

> A new allegation was made on November 4, 2014 alleging Child had been sexually abused by [H.G.2]. This report was made by Child's [therapist] after Child revealed [H.G.2] had contact with Child's "private parts". There is no evidence as to whether this was a new act or the report of a prior act. [CYS intake investigator] testified that CYS currently has an open case with the family, and is developing a Family Service Plan. [The investigator] recommended that Child continue with therapy . . . and Mother, Father, and all the children have a psychosexual evaluation. Furthermore, she recommended that [Child] and [H.G.2] have no further contact until this is "worked out".

Amended Memorandum Opinion and Order of Court, 6/29/15, at 5.

and scheduling argument thereon for February 19, 2015. Father's counsel submitted a proposal for holiday custody on January 28, 2015, and Mother's counsel submitted a holiday custody proposal on February 9, 2015.

While no order on the reconsideration motion was entered, an amended memorandum opinion and order of court was docketed on June 29, 2015. The amended memorandum opinion and order included a holiday schedule, which adopted Father's proposal.

By order dated June 30, 2015 and entered July 6, 2015, the trial court addressed Mother's motion for reconsideration, stating that it had erred in attaching an unedited draft of procedural history and findings of fact to the January 5, 2015 order. The trial court granted Mother's motion for reconsideration, in part, to revise the findings of fact that the trial court agreed were in error. The trial court therein acknowledged four errors to the findings of fact and these corrections were reflected in the June 29, 2015 amended memorandum opinion and order of court. On July 29, 2015, Mother filed an appeal from the June 29, 2015 order[2] and opinion. Mother

_____

[2] Mother acknowledged in her notice of appeal at 1165 WDA 2015, from the June 29, 2015 order, that the appeal at 1022 WDA 2015, from the order entered January 5, 2015, was then pending. Mother indicated that the motion for reconsideration filed at 1022 WDA 2015 was never ruled on and therefore the order entered January 5, 2015 became final on June 4, 2015. Mother asserted that out of an abundance of caution and the fact that the June 29, 2015 order addressed holidays for the first time, she filed the notice of appeal at 1165 WDA 2015. Notice of appeal, 1165 WDA 2015, 7/29/15, at 1.

also filed a Pa.R.A.P. 1925(b) statement on the same date. The trial court issued opinions pursuant to Pa.R.A.P. 1925(a) in both appeals. Upon application by Mother, this Court consolidated the two appeals by order filed August 12, 2015. Order, 8/12/15.

Mother presents the following issues for our review:

I. Whether the trial court's Memorandum Opinions and Orders of Court dated January 2, 2015 and June 29, 2015 are replete with erroneous statements of fact; with the result that there is not competent evidence to support the legal conclusions of the trial court, such that the Honorable Trial Court abused its discretion and erred as a matter of law in its review and evaluation of the evidence presented and the application of the custody factors to such evidence.

II. Whether the Honorable Trial Court erred and abused its discretion in limiting Mother's custody of the Child to only every other weekend where Mother was the Child's primary physical custodian from the parties' separation in August 2013 until Father presented his Petition containing allegations on August 21, 2014 four days prior to the date the custody trial was to commence, and the Trial Court's stated purpose of safety could be met with a far less restrictive arrangement, as Mother has custody of her older children on a week-on, week-off basis.

III. Whether the Trial Court abused its discretion, erred as a matter of law, and violated Mother's due process where it limited Mother's custody time to every other weekend when it made no finding that additional contact with Mother alone gives rise to a reasonable suspicion that the Child has been abused by Mother or is in imminent danger of abuse by Mother.

IV. Whether the Trial Court abused its discretion, erred as a matter of law, and violated Mother's due process where it eliminated all contact between siblings where it made no finding that contact between the Child and Mother's two younger sons gives rise to a reasonable suspicion that the Child has been abused by those other children or is in imminent danger of abuse if only Mother and her two younger sons are present.

V. Whether the Trial Court abused its discretion, erred as a matter of law, and violated Mother's due process where it eliminated all contact between siblings, where it made no inquiry into the availability of safe contact between the Child and her siblings.

VI. Whether the decision of the Honorable Trial Court to limit Mother's custody time with the Child to every other weekend and to prohibit contact between the Child and her two siblings against whom no allegations were made was not in the Child's best interest.

VII. Whether the Trial Court abused its discretion, erred as a matter of law, and violated Mother's due process where it eliminated all contact between Child and her half-siblings, E.G. and [H.G.2], where it made no inquiry into the availability of safe contact between the Child and those two siblings.

VIII. Whether the Trial Court erred and abused its discretion when it correctly ruled that the parties are capable of sufficient communication to share legal custody but then ruled that their conflict prohibits shared physical custody.

IX. Whether the Trial Court abused its discretion and erred as a matter of law, when it ordered each party to sign a release for the therapist for each of the parties including the Child, to allow each therapist to communicate with the others as this is a violation of the fundamental right to privacy and the patient- therapist privilege.

X. Whether the Honorable Trial Court erred and abused its discretion in adopting wholesale the holiday schedule proffered by Father where the schedule proposed by Mother was specifically tailored so that Mother's holiday time with Child would not overlap with the holidays when Mother has custody of her children from a prior relationship, while the schedule proposed by Father effectively eliminates Mother's opportunity to exercise holiday custody if custody of her children from a prior relationship coincides with the holiday granted her in the Trial Court's Order.

Mother's Brief at 18-21.

Initially, we observe that because the custody hearings in this matter were held in October and November of 2014, the Child Custody Act is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding when custody evidentiary proceeding commences on or after the effective date of the Act, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207–208 (Pa. Super. 2015) (quoting *C.R.F.*, 45 A.3d at 443).

We have stated:

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

- 7 -

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18–19 (quotation and citations omitted).

In her first issue, Mother asserts that the trial court's memorandum opinions and orders entered January 5, 2015 and June 29, 2015, are replete with erroneous statements of fact. Mother's Brief at 33. As a result, Mother argues, there is not competent evidence supporting the legal conclusions of the trial court. **Id.** Thus, she maintains the trial court abused its discretion and erred as a matter of law in its review and evaluation of the evidence presented and the application of the custody factors to such evidence. **Id.** In her brief, Mother reproduces language from her motion for reconsideration in which she specifies nine alleged factual errors made by the trial court. **Id.** at 34-35. Mother acknowledges that in its order dated June 30, 2015, the trial court stated that the "'Procedural History and Findings of Fact' attached to this Court's Order dated January 2, 2015, was an unedited draft that, upon review, should not have been attached to the Order." **Id.** at 35. Despite the trial court's correction of four specific

findings, Mother argues that the trial court made multiple errors that evidence a bias against Mother. *Id.* at 36, 41.

We first note that despite claiming in her brief that nine specific errors were made by the trial court, Mother makes the following vague claim regarding these errors in her Pa.R.A.P. 1925(b) statement:

> 1. The Honorable Trial Court's Amended Memorandum Opinion and Order of Court dated June 29, 2015 is replete with erroneous statements of fact and thus, there is not competent evidence to support the legal conclusions of the trial court.
>
> 2. In light of the number of factual errors set forth in the Amended Memorandum Opinion and Order of Court dated June 29, 2015, it is clear the Honorable Trial Court abused its discretion, erred as a matter of law, and did not afford Mother due process in its review and evaluation of the evidence presented and the application of the custody factors to such evidence.

Concise Statement of Errors Complained of on Appeal, 7/29/15, at 2.[3]

"An appellant's failure to include an issue in his Rule 1925(b) statement waives that issue for purposes of appellate review." *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006). Moreover, this Court has stated the following regarding vague or overly broad statements:

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought

---

[3] We note that Mother included the identical language in her Pa.R.A.P. 1925(b) statement filed in her appeal at 1022 WDA 2015, with the exception of reference made to the memorandum opinion and order of court entered January 5, 2015. Concise Statement of Errors complained of on Appeal, 7/6/15, at 2.

to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.

In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. While [**Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998)] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, for the reasons set forth above we conclude that **Lord** should also apply to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

**Id.**

Indeed, in its Pa.R.A.P. 1925(a) opinion, the trial court expressed its inability to fully address Mother's claim due to her failure to set forth in her Pa.R.A.P. 1925(b) statement the specific "factual errors" she was alleging. Trial Court Opinion, 9/17/15, at 2. Because Mother's vague Pa.R.A.P. 1925(b) statement has hampered appellate review, we find her first issue waived.

Moreover, we note the trial court's explanation regarding its correction of the findings of fact:

The Memorandum Opinion and Order of Court is not "replete with erroneous statements of fact." The "Procedural History of Findings of Fact" attached to the Court's January 2, 2015 Memorandum Opinion was an unedited preliminary draft that, upon review, should not have been the final copy attached to the Order. However, upon review of the thirteen and a half pages, the Court found four "errors," most of which were clerical. . . . The Court did not base any decision on the above factual "errors," but notes that they were clerical errors only, and that the Court's legal analysis and decision were based upon the Court's personal recollection of the facts which was consistent

- 10 -

with the record. None of the four "errors" were considered or given any weight in the Court's decision.

Trial Court Opinion, 9/17/15, at 1-2.

Thus, the trial court reviewed its Findings for errors, and subsequently identified and corrected those errors as reflected in its June 29, 2015 amended memorandum opinion and order of court. Additionally, the trial court explained that its legal analysis and decision were based upon the trial court's personal recollection of the facts that were consistent with the record. Accordingly, we discern no abuse of discretion by the trial court. Mother is entitled to no relief on this claim.

In issues II through VII, Mother asserts various challenges to the custodial arrangement created by the trial court. Mother's Brief at 41-48. Mother summarized her argument on these issues as follows:

> The Trial Court erred and abused its discretion in limiting the Mother's custody time to two days out of every fourteen, with twelve days intervening. One of the Trial Court's rationale's for so restricting Mother's custody time was to ensure the Child's safety due to concerns regarding her interactions with her older siblings, Mother's children from a prior relationship. Any safety concerns of the Trial Court could have been assuaged with a far less restrictive regime, where Mother has custody of her older children on a week-on, week-off basis and the failure to implement a less restrictive custody schedule infringes on Mother's fundamental interest in the care and welfare of her child. The Trial Court has also contradicted its own statement that it did not intend to restrict custody time, but rather to "give each family member as much time with the child, in a safe environment, as possible."

> The Trial Court erred by limiting Mother's custody time to every other weekend, where there was no finding that Mother was a risk to the Child, and by limiting or eliminating sibling

contact. The Trial Court failed to explore other options in this exceptionally "hard" case, electing instead to allow the unity of the family to suffer.

Mother's Brief at 30-31. Additionally, Mother specifically argues in her second issue that the trial court erred and abused its discretion in limiting Mother's custody of Child to only every other weekend where Mother was Child's primary physical custodian from the time the parties separated in August 2013 until August 21, 2014, when Father presented his petition. Mother's Brief at 41.

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338(a). The best interest factors that the trial court must consider are set forth at 23 Pa.C.S. § 5328. *E.D. v. M.P.*, 33 A.3d 73, 80–81 n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.[4]

In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained:

"**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). Section 5323(d) applies to cases involving custody and relocation. **A.M.S. v. M.R.C.**, 70 A.3d 830, 835 (Pa. Super. 2013).

_____

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1), providing for consideration of child abuse and involvement with child protective services. Although applicable at the time of the custody hearings in this matter, there was no evidence that would have required the trial court's consideration of this factor as there was no claim regarding parental abuse.

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822–823.

In the present appeal, the trial court thoroughly discussed the sixteen custody best-interest factors in its opinion and order. Amended Memorandum Opinion and Order of Court, 6/29/15, at 16-29. We decline to duplicate that lengthy recitation here. A review of the record reflects that the trial court's analysis and conclusions regarding those factors are supported by the evidence of record. Thus, based on those determinations, we conclude that the trial court did not err or abuse its discretion in crafting the present custody arrangement and did so with Child's best interest in mind.

Indeed, the trial court's studied consideration of this matter is reflected in the following statement it made to the parties:

I'm going to be very honest with [you] in that because of the Court's Findings of Facts in this case, from a practical standpoint, this is one of the hardest orders to draft. We have so many children. We have children that are not under this Court's jurisdiction. And we have at least two children who have direct evidence, at least as my Findings go, where we have either sexual abuse or attempt at sexual abuse or concerns of sexual abuse at the very least. I mean -- so, I'm going to be honest with you: You are not going to get an Order that addresses it all. I just can't. I mean, I went back for weeks and weeks, looking at: How do I let the children have time with the siblings

- 15 -

who are not involved with the two sexual issues, and how -- you know, how does Mom's extended family get time with the – I mean, it is just nearly impossible to think of all the potential scenarios that could exist. And I have two parents who are going to need to be micromanaged. There is no question. Neither one of them are capable of taking a big picture and applying it appropriately and in the best interest of the children without micromanaging. So -- with a case that is very difficult to micromanage. So, I don't doubt that you're going to walk away with some questions . . . . You are going to walk away going, What do we do here? And I feel the same frustration that you do, and I'm sure it's difficult in discussing it with your clients. I just want you to understand my mindset and where I'm coming from.

My primary consideration will be to do as much as is humanly possible, what is [Child's] best interest, balancing the interest of safety and emotional security with the interests of her not feeling like she's the weird one, out of place, because she can't be with some of her – I mean, there is no good answer here -- I'm just going to be honest – unless, or, in my hope, that through therapy some of these issues can be addressed. The Court can't solve them. I can only try to draft an Order that, as much as possible, puts [Child's] best interest with those balances.

N.T., 2/19/15, at 32-34.

Furthermore, with regard to Mother's argument that the trial court erred by failing to afford proper consideration to her role as Child's primary caretaker, we note that this Court has reasoned that the Act indicates that the only factors given weighted consideration are factors that affect the safety of the child. **M.J.M.**, 63 A.3d at 338. The **M.J.M.** panel explained:

The language of [the Act] is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" *Id*. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the

pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); **see also Ario v. Ingram Micro, Inc.**, 600 Pa. 305, 317, 965 A.2d 1194, 1201 (2009). If the Pennsylvania Legislature intended for extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. **Stated another way, the absence of such language indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker.**

Furthermore, the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day-to-day care for a young child) is addressed implicitly in the enumerated factors. **See, e.g.**, 23 Pa.C.S.A. §§ 5328(a)(3) ("The parental duties performed by each party on behalf of the child."); (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). The considerations embraced by the primary caretaker doctrine have been woven into the statutory factors, such that they have become part and parcel of the mandatory inquiry.

In short, the Legislature has created a mandatory inquiry to aid trial courts in determining the best interests of the child in a custody dispute. In doing so, it articulated the components of a parent's obligations and characteristics, and a child's needs and welfare, that must be incorporated in the trial court's custody decision where the parents are incapable of doing so on their own. In setting forth these factors, the Legislature has required the trial court to give additional weight *only* to factors that it finds affect the safety of the child. This language is clear, and we cannot expand it to provide that a trial court must also give weighted consideration to a party's role as primary caretaker. We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the Legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.

We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the

section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16). It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*M.J.M.*, 63 A.3d at 338–339 (footnote omitted) (emphasis added).

Based on this Court's discussion of the primary caretaker doctrine in *M.J.M.*, we find no merit to Mother's contention regarding the weight the trial court afforded the fact that Mother was previously Child's primary caretaker. We find that the trial court carefully considered all section 5328(a) factors, that the trial court's conclusions are not unreasonable as shown by the evidence of record, and we find no error of law on the part of the trial court. We, therefore, will not disturb the trial court's determination. *C.R.F.*, 45 A.3d at 443.

In issue VIII, Mother asserts that the trial court erred and abused its discretion in ruling that the conflict between the parties prohibited shared physical custody. Mother's Brief at 48. Mother seems to be arguing that this determination is not supported by the trial court's other findings, specifically, the trial court's conclusion that the parties are capable of

communication sufficient to allow for shared legal custody. ***Id.***[5]   Mother

argues that since the trial court found that the parties can share legal

custody, there should be no reason their conflict should prevent shared

physical custody.  ***Id.*** at 52.

In issuing its custody order, the trial court made the following

determination in considering factor 5328(a)(13): [6]

> The parties are able to communicate at a minimum level, at best.  They constantly point the finger at the other party and fail to look at themselves for any kind of blame.  There is an extremely high conflict among the parties.  Co-parenting counseling as well as individual counseling would help them get through their communication issues with regards to Child.  The parties should also keep their communication to the limited nature of Child and her needs and well-being.  At this point in time, the Court believes the parties are capable of communicating on a minimal level so that shared legal custody is possible, however, their conflict prohibits shared physical custody.

Amended Memorandum Opinion and Order of Court, 6/29/15, at 28.

Additionally, in its Pa.R.A.P. 1925(a) opinion, the trial court provided

the following analysis in response to this issue:

---

[5] Despite identifying this as the issue, Mother focuses much of her discussion in this section of her brief on how the change in Mother's custodial time would affect Child, and the fact that Mother previously had primary physical custody of Child.  Mother's Brief at 48-51.

[6] This factor requires that the court consider "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party."  23 Pa.C.S. § 5328(a)(13).

The parties are able to communicate, however minimally due to their hostility toward the other. While the level of communication may impact sole physical custody, there was no evidence to support anything but shared legal custody. In determining whether to award shared legal custody, the trial court must consider the following factors: whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children, whether both parents evidence a continuing desire for active involvement in the child's life, whether the child recognizes both parents as a source of security and love; and whether a minimal degree of cooperation between the parents is possible. . . . . An award of shared legal custody is appropriate where the parties have not shown an inability to cooperate to a minimal degree or to isolate their personal conflicts from their role as parents. . . . The Court considered all of the above enumerated factors and the parties' ability to communicate in awarding shared legal custody.

Due to the serious nature of the alleged abuse, Mother's inability or unwillingness to provide reasonable boundaries between her children so as to maintain a safe environment for Child, and the Court's optimism that Mother would seek counseling, the Court found that it would be in Child's best interest for Mother and Father to have shared legal custody. Prospectively it is important that each parent be able to participate in and have input in medical, emotional and educational decisions for Child.

Trial Court Opinion, 9/17/15, at 5-6.

The trial court's determination is supported by the evidence of record and is not unreasonable in light of that evidence. The trial court was the sole judge of the credibility of the parties and the level of hostility exhibited by the parties towards each other. We decline Mother's invitation to second-guess those determinations by the trial court. As we have noted:

[t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is

- 20 -

unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002). Because the trial court's determination on this issue and the overall custody arrangement is reasonable and focused on the best interests of Child, we cannot agree that the trial court erred or abused its discretion in making this determination. Mother's claim fails.

In her next issue, Mother contends that the trial court abused its discretion and erred as a matter of law when it ordered each party to sign a release for their respective therapists so as to allow the therapists to communicate. Mother's Brief at 54. Mother argues that such compulsion is a violation of the fundamental right to privacy and the patient-therapist privilege. *Id.*

In response to this issue, the trial court provided the following explanation:

> It was the Court's understanding that counsel for all parties agreed that the parties and Child would be best served if the counselors/therapists could communicate for treatment purposes only. On February 19, 2015, Counsel for Mother confirmed that Mother was still agreeable to do so. The Court agrees that the Order of Court dated January 2, 2015, paragraph seven, should be amended to read "may" rather than "shall."

Trial Court Opinion, 9/17/15 at 6. Moreover, the amended custody order of June 29, 2015, does not include a requirement that the parties sign releases for their respective therapists to allow for sharing of information.

In her appellate brief, Mother asserts the following:

> This issue was raised in light of the Trial Court's Memorandum Opinion and Order dated January 2, 2015. In reviewing the Trial Court's Amended Memorandum Opinion and Order entered June 29, 2015, . . ., it appears clear there was no intention to impose on any party's privacy rights.

Mother's Brief at 54.

Thus, there is no longer any requirement that the parties sign releases as part of the custody order, and Mother is no longer asserting a violation of her privacy rights. Accordingly, we need not discuss this issue further.

In her final issue, Mother asserts that the trial court erred and abused its discretion in adopting wholesale the holiday schedule proffered by Father. Mother's Brief at 55. Mother maintains that the schedule she proposed was specifically tailored so that Mother's holiday time with Child would not overlap with the holidays when Mother has custody of her other children. *Id.* Mother contends that the schedule proposed by Father and adopted by the trial court effectively eliminates Mother's opportunity to exercise holiday custody of Child if custody of her other children coincides with that designation. *Id.*

The adoption of the holiday custody schedule by the trial court was made in light of and consideration of the overall custody determination of the trial court. As noted, the trial court thoroughly and carefully considered all of the sixteen factors listed under 23 Pa.C.S. § 5328(a)(1)-(16) in crafting the custody arrangement. The holiday schedule adopted by the trial

court is consistent with those considerations and the trial court's focus on the best interests of Child. We cannot conclude that the trial court's adopted holiday schedule is unreasonable.

Furthermore, we note that in her brief, Mother asserts that she does not have a specific holiday schedule for custody of her other children. Mother's Brief at 56 n.34. Therefore, we determine that Mother's assertion that she will be effectively precluded from exercising any holiday custody of Child due to a coincidence of custody of her other children lacks merit. Accordingly, we cannot conclude that the trial court erred or abused its discretion in establishing the holiday custody schedule.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2016