J-S02025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.A.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| E.H. | : | |
| | : | |
| Appellee | : | No. 1518 MDA 2019 |

Appeal from the Order Entered August 23, 2019
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  15382-2010

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:               **FILED: FEBRUARY 6, 2020**

Appellant, A.A.R. ("Mother"), appeals from the order entered in the Luzerne County Court of Common Pleas, which denied her petitions for modification of custody and relocation, and awarded primary physical custody of E.V.H. (born in January 2009) ("Child") to Appellee, E.H. ("Father").  Due to a change in circumstances during the pendency of this appeal, we vacate and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. Mother and Father were never married but were in a romantic relationship from 2006 to 2010.  In January of 2009, Child was born.  At all times relevant to these proceedings, Father resided with (and still resides with) his parents ("Paternal Grandparents").  Father has a history of seizures and other physical ailments, so Paternal Grandparents are very involved in Child's caretaking.

Additionally, Mother has a daughter from a previous relationship ("Half-Sister"), who Father raised with Mother when Mother and Father were together.

On November 10, 2010, Mother filed a custody complaint. The court entered a custody order on December 20, 2010, awarding the parties shared legal custody, and Father primary physical custody of Child, subject to Mother's periods of partial physical custody, pending a custody hearing. On January 26, 2011, the parties stipulated to shared legal and physical custody of Child on a 50/50 basis. Mother filed a petition to modify custody on March 30, 2011. On June 17, 2011, the court entered an order, by agreement of the parties, continuing the custody arrangement set forth in the January 26, 2011 order, with minor modifications. In 2017, Mother moved to Allentown to live with her fiancé. At that time, the parties agreed Father would have primary physical custody of Child, subject to Mother's periods of partial physical custody every weekend from Friday through Sunday, except during the summer when the parties would share physical custody evenly.

On April 19, 2018, Mother filed the current petition to modify custody, seeking primary physical custody of Child. The court subsequently appointed a guardian *ad litem* ("GAL") for Child. By agreement of the parties, the court entered an order on September 13, 2018, for Father to have primary physical custody of Child, subject to Mother's periods of partial physical custody, pending a custody hearing. On September 20, 2018, Mother filed a notice of

proposed relocation to Allentown, where Mother and Half-Sister[1] were living with Mother's fiancé. Mother filed an amended notice of proposed relocation on October 18, 2018. The next day, Father filed a counter-affidavit opposing relocation.

The court held a custody/relocation hearing on August 16, 2019. The court heard testimony from Mother, Mother's fiancé, Half-Sister, Father, Paternal Grandparents, and the GAL. The witnesses testified, *inter alia*, as follows. Mother testified that she initially agreed to let Father have primary physical custody of Child after her move to Allentown because Child was getting good grades, had friends at his school, and seemed happy and healthy. While in Father's primary physical custody, however, Mother alleged Child gained significant weight and was diagnosed with obesity and pre-diabetes. Mother said she learned Child played videogames most of the day during Father's custodial time and ate too much "fast food." Mother also testified that Paternal Grandparents had been providing for the majority of Child's care and Father was not actively participating in Child's daily routines. (N.T. Hearing, 8/16/19, at 6-38; 110-115; R.R. at 27a-35a; 53a-55a). Mother's fiancé said he has a good relationship with Child and explained that Child has more rules to follow in his and Mother's home. (*Id.* at 39-44; R.R. at 36a-

---

[1] Due to Father's and Paternal Grandparents' close relationship with Half-Sister, Father has also enjoyed some custodial time with Half-Sister during the course of these proceedings. Half-Sister is not the subject of this appeal.

37a). Half-Sister agreed that Child eats a lot of "fast food" and plays video games frequently during Father's custodial time. Half-Sister also complained about Father's smoking in the house. (*Id.* at 46-58; R.R. at 37a-40a).

Father disputed Mother's contention that Paternal Grandparents provide most of Child's care during his custodial periods. Father conceded that Child loves to play video games but denied that Child plays video games most of the day. Rather, Father indicated Child also loves to swim and play outside. Father admitted Child was eating too much "fast food" but said that he and Paternal Grandparents were working on Child's nutrition, and Child had already lost some weight. Father explained his parents provide transportation for Child because Father is unable to drive. Father highlighted Child's excellent grades in school. Father said he no longer smokes in the house. (*Id.* at 59-87; R.R. at 41a-48a). Paternal Grandparents echoed Father's remarks that their family was working on Child's nutrition. Paternal Grandparents said Father is present during mealtimes and actively participates in caring for Child. Paternal Grandparents emphasized that Child is happy in their home. (*Id.* at 88-110; R.R. at 48a-53a).

The GAL testified that Child spends a lot of time playing video games at Father's and Paternal Grandparents' home. The GAL said Father admitted that his parents provide 75% of Child's care because of Father's physical ailments.[2]

---

[2] Father denied making this statement.

The GAL opined that Father is "too removed" from Child's day-to-day care. The GAL stated Child's preference to live with Father and Paternal Grandparents, and explained that Child did not want to leave his current school and friends in Father's community. The GAL further noted that Child appeared to have "practiced" before his interview, as Child voluntarily offered statements to the GAL, which were favorable to Father and Paternal Grandparents, without the GAL's questioning on those topics. (*Id.* at 116-158; R.R. at 55a-65a).

On August 23, 2019, the court denied Mother's modification and relocation petitions.[3] Specifically, the court ordered the parties to continue the custody arrangement of Father having primary physical custody of Child, subject to Mother's periods of partial physical custody every weekend, except during the summers when the parties would split physical custody. After analyzing the relevant custody factors, the court explained its custody decision as follows:

> Although Mother and Father adequately care for [Child] during their respective periods of custody, Father has assumed the role of primary caretaker of [Child] for the past two years and [Child] is thriving physically, intellectually, spiritually and morally. He is most familiar with this community, does well in school and has friends in Father's neighborhood, along with extended family of both parents. [Father's] residence has been [Child's] only consistent home since birth.

---

[3] Based on the court's denial of Mother's modification petition, the court denied Mother's relocation petitions as moot.

[The GAL] testified primary physical custody of [Child] should be granted to Mother. The [c]ourt notes the [GAL's] respective position is advisory. …

The [GAL] and Mother both testified to concerns about Father's health situation and occasional bouts of late sleeping. Father testified the late sleeping bouts are minimal and live-in Paternal Grandparents are always present if he is temporarily unable to attend to [Child's] needs. Paternal Grandparents attested to this arrangement. The [c]ourt finds [Child] is adequately cared for by Father and any health issues of Father are not consistently interfering with Father's ability to directly care for [Child]. The quality and quantity of time Father spends with [Child] outweighs any occasional inability due to Father's health. Furthermore, Father has ensured adequate child-care arrangements met by Paternal Grandparents should he suffer an emergency. Testimony regarding Father smoking cigarettes in the presence of [Child] was provided to the [c]ourt. Father indicated he addressed this issue and has not been smoking in the presence of [Child]. The [c]ourt received no further testimony of any adverse health impact on [Child].

Both parties testified to [Child's] physical health conditions regarding weight and a pre-diabetes diagnosis. Father testified that he has altered [Child's] diet and created and participated in physical activities—such as swimming—with [Child] to remedy the weight issues. Father and Mother agreed for [Child] to consult with a nutritionist in the future. Father and Paternal Grandparents testified [Child] is following a healthy diet which they share in preparing. Father testified he was a chef prior to seeking [d]isability.

Mother has not met the burden of proof, by [a] preponderance of the evidence, that the best interests of [Child] would be served by modification of the previous Order of this [c]ourt. Mother's health concerns are sincere and have been adequately addressed. Mother and [Child] have a loving relationship.

[Child] enjoys and will continue to enjoy appreciable periods with Mother and [H]alf-[S]ister…under the present custody arrangement. [Child] is with [M]other every weekend

- 6 -

during the school year and one-half of the summer. The [c]ourt encourages the parties to mutually expand on these periods when travel permits. The parties should also support [Child] in his athletic extra-curricular interests. Father and Mother should also work together to ensure that [Child] and [Half-Sister] are together as often as possible.

Upon consideration of all relevant factors and law, the best interest of [Child] requires the present Order remain in effect. For the continued well-being of this young child, thriving socially, educationally, morally and spiritually, the custody order must remain status quo.

(Trial Court Opinion, filed August 23, 2019, at unnumbered pages 8-10; R.R. at 99a-101a) (internal citation omitted). On September 18, 2019, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).

On or around December 18, 2019, during the pendency of this appeal, Father was arrested and charged with various drug related offenses. Mother filed an emergency motion for special relief in the trial court on December 20, 2019, seeking primary physical custody of Child. Mother alleged that Father was unable to post bail and remained incarcerated. That day, the trial court entered an order transferring to Mother sole legal and physical custody of Child until further order of court. The court gave Paternal Grandparents periods of visitation at times agreed to by Mother and Paternal Grandparents. The court scheduled a hearing for January 9, 2020.

On January 3, 2020, Mother filed an emergency motion in this Court, asking this Court to enter an order granting the trial court express permission to act while the appeal is pending. This Court granted Mother's motion on

January 7, 2020. The trial court held a hearing on January 9, 2020, after which the court entered a temporary emergency custody order, by agreement of the parties, permitting Mother to retain sole legal and physical custody of Child. The order further provides that Father shall have supervised visits with Child as agreed between the parties but no visits while Father is incarcerated. The order also indicated that Child shall have visits with Paternal Grandparents two weekends per month with dates and times to be agreed between Mother and Paternal Grandparents, but no overnight visits if Father is residing in their home. As a result of the temporary custody order, Mother enrolled Child in school in her district.

Mother raises the following issues for our review:

> DID THE TRIAL COURT ERR IN DENYING MOTHER'S PETITION FOR MODIFICATION OF CUSTODY AND MORE SPECIFICALLY FAIL TO PROPERLY ADDRESS THE FACTORS AND APPLY THE APPROPRIATE WEIGHT TO THOSE FACTORS AS SET FORTH IN TITLE 23 SECTION 5328?
>
> DID THE TRIAL COURT ERR IN FINDING THAT…MOTHER'S PETITION FOR RELOCATION WAS MOOT AND MORE SPECIFICALLY ERR BY FAILING TO ADDRESS THE FACTORS AND APPLY THE APPROPRIATE WEIGHT TO THOSE FACTORS AS SET FORTH IN TITLE 23 SECTION 5337[?]
>
> DID THE TRIAL COURT ERR IN FAILING TO APPLY ANY WEIGHT TO THE GUARDIAN *AD LITEM*'S TESTIMONY AND REPORTS[?]
>
> DID THE TRIAL COURT ERR IN FINDING THAT…FATHER MEETS ALL PARENTAL DUTIES FOR…CHILD AND ERR BY SPECIFICALLY FINDING THAT HE IS ABLE TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF…CHILD, AND THAT HE HAS BEEN THE PRIMARY CARETAKER OF…CHILD[?]

DID THE TRIAL COURT ERR IN FINDING THAT…CHILD IS HEALTHY[?]

(Mother's Brief at 4).

In custody cases, the relevant scope and standard of review are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). "On issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *R.M.G., Jr., supra*.

> The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*Id.* (quoting *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002)).

The Child Custody Act ("Act") provides:

## § 5328.  Factors to consider when awarding custody

**(a)  Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)    Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)    The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)    The parental duties performed by each party on behalf of the child.

(4)    The need for stability and continuity in the child's education, family life and community life.

(5)    The availability of extended family.

(6)    The child's sibling relationships.

(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)    Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Additionally, with respect to proposed relocation, the Act requires the court to consider the following factors:

**§ 5337. Relocation**

\*     \*     \*

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child

and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Instantly, the record makes clear the circumstances of this case have changed significantly since entry of the court's August 23, 2019 order, which is the subject of this appeal. At the time the court entered its custody order awarding Father primary physical custody, the court noted that Child was

familiar with Father's community, did well in school, and had friends in Father's neighborhood, along with extended family of both parents. Nevertheless, Father's recent arrest and incarceration forced the court to uproot Child and place temporary primary physical custody of Child with Mother. Father's arrest and incarceration on drug related offenses also call into question the court's analysis of the specific custody factors.[4] In light of these changed circumstances, we vacate the court's August 23, 2019 custody order and remand for the court to conduct a new custody/relocation hearing, so the court can evaluate whether it should enter a final order continuing primary physical custody with Mother, in the best interests of Child.[5] Upon remand, the trial court shall analyze each of the relevant custody and relocation factors. Accordingly, we vacate and remand for further

_____

[4] For example, in its analysis of 23 Pa.C.S.A. § 5328(a)(14), governing the history of drug or alcohol abuse of a party or member of a party's household, the court indicated there was no history of drug and/or alcohol use by either parent. (**See** Trial Court Opinion at unnumbered page 6; R.R. at 97a).

[5] We recognize that the court's transfer of primary physical custody to Mother could appear to render Mother's appeal moot. **See In re J.A.**, 107 A.3d 799 (Pa.Super. 2015) (stating general rule that actual case or controversy must exist at all stages of judicial process, or case will be dismissed as moot; issue can become moot during pendency of appeal due to intervening change in facts of case or due to intervening change in law; in that case, opinion of this Court is rendered advisory in nature; issue before court is moot if in ruling upon issue, court cannot enter order that has any legal force or effect). Because the court expressly stated that its January 9, 2020 order transferring custody was only temporary, the best resolution of this case is to vacate and remand for a new custody/relocation hearing in light of the changed circumstances.

proceedings.

Order vacated. Case remanded for further proceedings. Jurisdiction is relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/06/2020