J-A09031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| P.P.D., | | : | IN THE SUPERIOR COURT OF |
| | | : | PENNSYLVANIA |
| | Appellant | : | |
| | | : | |
| | v. | : | |
| | | : | |
| M.T.G., | | : | |
| | | : | |
| | Appellee | : | No. 1482 MDA 2015 |

Appeal from the Order Entered July 29, 2015,
in the Court of Common Pleas of Dauphin County
Civil Division at No.: 2013-CV-05921-CU

BEFORE: FORD ELLIOTT, P.J.E., JENKINS, and PLATT[*], JJ.

MEMORANDUM BY PLATT, J.:                    **FILED JULY 11, 2016**

P.P.D. (Grandmother) appeals from the custody order entered in the Court of Common Pleas of Dauphin County (trial court) on July 29, 2015,[1] that grants primary physical and sole legal custody of O.G. (Child), born in August of 2011, to M.T.G. (Father), and grants Grandmother partial physical custody. We affirm.

Grandmother filed a complaint in custody against Father on July 8, 2013. Father was the husband of Grandmother's daughter, C.G. (Mother), who died after a long battle against brain cancer in June of 2013.

---

[*] Retired Senior Judge assigned to Superior Court.

[1] A review of the docket entries reveals that the trial court's order and opinion were docketed on July 29, 2015. We have changed the caption accordingly.

Mother and Father married in May of 2004, and lived at or near Fort Bragg in North Carolina for about four years before relocating to Hershey, Pennsylvania, in June 2008. They stayed in Hershey for about one year until Father accepted a position with the Federal Bureau of Investigation and he and Mother moved to Bloomsbury, New Jersey. They resided there until January of 2012, when Mother's brain tumor was diagnosed.

Mother underwent treatment for her cancer in North Carolina. During that time, she stayed at the home of Child's maternal aunt and uncle. Grandmother and other members of Grandmother's family also stayed in the residence, as did Father and members of his family.[2]

In preparation for the hearings in this matter, Grandmother arranged for a computer expert to examine several computers in the residence in North Carolina that were alleged to have been used by Father. According to the expert's report, some of the websites visited by users of those computers were pornographic. Messages recovered by the expert, particularly those to and from Father and his brother, contained references to Hitler, and to racially inflammatory words and topics, but were largely conversations between Father and his brother or others. According to the trial court, "The only other notable characteristic of those text messages or conversations was that they seemed to evidence a degree of immaturity and

---

[2] The trial court states that Mother stayed in the home of friends in North Carolina. Grandmother states that they stayed with Child's maternal aunt and uncle. (*See* Grandmother's Brief, at 11, 22 n.4).

lack of respect for others far greater than one would have hoped an FBI agent would have used in any conversation." (**See** Trial Court Amended Memorandum Opinion, 9/22/15, at 3).[3]

When Father was questioned about the conversations between himself and his brother, he claimed that he had no recollection of any of the conversations whatsoever, even those in which his phone number or other identifying information was included in the materials the expert had recovered. Father refused to admit or deny that any of the conversations or parts of those conversations had ever taken place; he simply stated that he had no recollection of those conversations. According to the trial court:

> If the purpose of Grandmother was to prove that Father was a pornographer or of low character, there was simply too little direct evidence of Father's having been the sole user of any such device for us to accept the evidence as proof of Father's having accessed the various pornographic websites listed in the computer forensic expert's report. Instead, however, we were so unimpressed by Father's lack of candor under questioning that his credibility on all topics was severely damaged almost to the point of total destruction. He refused to state where his office was located, claiming that information (and all other information about his job title and employment) to be 'proprietary' to his employer and that he could not answer such questions, no matter how seemingly insignificant. Later in the hearings, other FBI employees testified of their employment without raising any objections such as those claimed by Father.

(**Id.** at 3-4).

---

[3] The trial court mistakenly filed an unedited draft of its memorandum on July 29, 2015, and corrected that filing by entering the corrected, final draft on September 22, 2015. There are no substantive differences between the two filings.

The trial court held hearings on Grandmother's complaint on December 16 and 17, 2014, February 12 and 26, 2015, March 18, 2015, and April 17, 2015. During those hearings, the trial court heard the testimony of Grandmother, Father, other family members, friends of the parties, co-workers and the computer expert hired by Grandmother.

The trial court summarized the testimony at those hearings:

> Both Father and Grandmother were present in the residence made available for Mother's use in North Carolina over a period of months. Given the nature of Mother's illness, one can only imagine how trying those months were for Grandmother and her family who must have felt enormous frustration at watching Mother's condition deteriorating despite all efforts of the health care system and despite all the prayers of those who knew and loved Mother and her family. We also cannot imagine the stress on Father who was simultaneously watching his wife's condition worsen while he was helpless to do anything to stop the disease's progression and his wife's death.

> Under such circumstances, it would be understandable that tempers would become short, emotions would run high and persons could be excused for feelings of guilt or of anger for the situation. The feeling of frustration would understandably run high. The waiting must have caused heightened tension and stress for all who were present. It would not surprise anyone if those who all loved Mother could lash out at each other under these conditions, even if they were to have blamed one another for what appears to have been an unavoidable end of Mother's life. We would wager that neither Father nor Grandmother were immune from such tension, nor failed to feel and to express anger seemingly aimed at each other during Mother's last months.

> To the extent that each expressed that anger in difficult times, it is likely that each caused ill feelings and each said things he or she would, in candor, wish he or she had not said. Whatever the cause, it was patently obvious to the [c]ourt that Father and Grandmother hold each other in some degree of contempt. Grandmother criticized Father's behavior during the

vigil in North Carolina. Father appeared to show little appreciation for Grandmother's care for Mother in Grandmother's home during the last year of Mother's illness.

All that having been noted during the evidentiary portion of the hearings, the question being presented to the [c]ourt, however, is simply this: What is in the best interest of the Child?

(***Id.*** at 4-5).

The trial court entered its order granting Father primary physical and sole legal custody of Child on July 29, 2015. Grandmother filed her notice of appeal and concise statement of errors complained of on appeal on August 28, 2015. ***See*** Pa.R.A.P. 1925(a)(2)(i). The trial court entered its opinion on September 28, 2015. ***See*** Pa.R.A.P. 1925(a)(2)(ii).

Grandmother presents the following questions for our consideration:

1. Whether the trial court erred by failing to address whether [Grandmother] has standing to seek shared legal and primary physical custody of the minor child pursuant to 23 Pa.C.S.[A.] § 5324(2) (*in loco parentis*) and/or § 5324(3), and as such, abused its discretion by entering a custody order that is not in the best interest of [Child?]

2. Whether the trial court's determination granting [Father] sole legal and primary physical custody of the minor child, especially given the trial court's finding that his "credibility on all topics was severely damaged almost to the point of total destruction," is against the weight of the evidence of record, contrary to the trial court's factual findings during its analysis of the best interest factors, and is not in the best interest of [Child?]

3. Whether the trial court erred by failing to rule on the finality of [Father's] Petition for the Immediate Entry of an Order Sealing the Record and Gagging the Participants filed on April 18, 2014, and as result, by failing to lift the [o]rder of April 24, 2014, which temporarily sealed the record pending further hearing on the matter, as [Father] did not meet his burden of proof pursuant to ***Katz v. Katz***, 356 Pa. Super. 461, 514 A.2d

1374 (1986) and ***Zdrok v. Zdrok***, 2003 Pa. Super. 265, 829 A.2d 697 (2003)[?]

4. Whether the trial court erred by appointing Kasey Shienvold, Psy.D., to assist the parties in resolving any disputes or disagreements regarding the custodial arrangement, as the appointment is inconsistent with Pa.R.C.P. 1915.11-1[?]

(Grandmother's Brief, at 5-7).

Preliminarily, we note we did not address Grandmother's third issue because it is not germane to disposing of the custody issues in this children's fast track appeal. ***See*** Pa.R.A.P. 102 (defining a children's fast track appeal as "[a]ny appeal from an order involving dependency, termination of parental rights, adoptions, custody or paternity.").

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated,

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on

the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. *See id.*

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*S.M. v. J.M.*, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting *Robinson v. Robinson*, 645 A.2d 836, 838 (Pa. 1994)).

Our Supreme Court has stated:

> The phrase '*in loco parentis*' refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. The rights

and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

***Peters v. Costello***, 891 A.2d 705, 710 (Pa. 2005) (citation omitted).

> The *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

***Id.*** at 711 (citation omitted).

In her first issue, Grandmother claims that the trial court erred in failing to find that she was entitled to seek primary physical custody of Child by dint of the fact that she had achieved the status of *in loco parentis* to Child. (**See** Grandmother's Brief, at 17-27).

We begin by noting that, in its amended memorandum, filed September 22, 2015, the trial court discussed each of the sixteen statutory custody factors in 23 Pa.C.S.A. § 5328 and concluded that it was in the best interest of Child for Father to retain primary custody. (**See** Trial Ct. Op., 9/22/15, at 7-16). After examining our law regarding *in loco parentis*, the trial court, in its Rule 1925(a) opinion, explained:

In the instant matter, we similarly found that the evidence demonstrates that [Grandmother] acted as no more than a caretaker, and the care that she provided is consistent with what would be expected to be used by a parent whose health is declining due to a fatal disease. Additionally, the evidence presented at the [h]earing supported a finding that [Grandmother] was not the only caretaker during the time period that Mother and the Child were living with [Grandmother]. There was testimony that numerous other relatives, as well as hired caregivers, provided care to the Child during the time period that [Grandmother] alleges she achieved *in loco parentis* status. Thus, this situation appeared to be one where an entire family worked together to care for a child while her mother's health declined, rather than one where [Grandmother] assumed parental status and discharged parental duties. As such, we did not find that [Grandmother] had provided sufficient evidence to show that she obtained *in loco parentis* status.

We made this finding prior to the issuance of the July 29, 2015 [o]rder. However, we did not include this explicit analysis in the [a]mended [m]emorandum [o]pinion, as it was clear that [Grandmother] had standing to seek some form of visitation and/or physical custody pursuant to 23 Pa.C.S.[A.] §[ ]5325(1), and it was superfluous in this instance to state that [Grandmother] had standing under one statute, but not under a different statute.

Additionally, case law is clear that, even in cases where a party has achieved *in loco parentis* status, there is still a presumption that the biological parent should be awarded primary custody, and that presumption can only be rebutted by clear and convincing evidence. **Jones v. Jones**, 884 A.2d 915, 917 (Pa. Super. 2005); **see also Kellogg v. Kellogg**, [] 646 A.2d 1246, 1249 ([Pa. Super. ]1994) (a third party who has established standing via *in loco parentis* status is not elevated to natural parent status in determining a custody dispute). We cited to this proposition in our [a]mended [m]emorandum [o]pinion, and analyzed the factors in accordance with same. We ultimately found that [Grandmother] did not provide clear and convincing evidence to rebut the presumption that [Father], as the Child's sole biological parent, should be the primary custodian, and entered an [o]rder in accordance with that finding. We respectfully request that our [o]rder be affirmed.

(Trial Court Opinion, 9/28/15, at 3-4).

We quote the trial court with approval. Our examination of the record reveals that Grandmother was only one of many people, including Father, who cared for Child during Mother's fatal illness. We emphasize that, even if the trial court had found that Grandmother stood *in loco parentis* to Child, Grandmother would still have to overcome the presumption that Father, Child's biological parent, was entitled to primary physical custody. **See Jones**, **supra** at 917. Grandmother's argument does not address, no less attempt to rebut, this presumption. Grandmother's first issue is without merit.

In her second issue, Grandmother claims that the trial court abused its discretion in finding that any of the sixteen custody factors weigh in Father's favor because it found that Father was not a credible witness. (**See** Grandmother's Brief, at 30). Our examination of the record reveals that Grandmother has waived this issue for her failure to develop a coherent argument. **See** Pa.R.A.P. 2101 (providing for waiver or dismissal where briefs do not comply with rules); Pa.R.A.P 2119(a)-(c).

In arguing her claim that the trial court abused its discretion, Grandmother examines the testimony of the various witnesses and asks us to reach a different conclusion than that reached by the trial court. Her argument, however, aside from a few citations to general principles of our custody law, contains no citation to any legal authority. (**See**

Grandmother's Brief, at 27-48). Grandmother makes no effort whatsoever to link the facts of her case to the law; she simply claims that the evidence does not support the trial court's determinations. In sum, Grandmother does not attempt to develop a coherent legal argument to support her conclusion that the trial court erred in awarding primary physical custody to Father, and, therefore, she has waived that argument.

"The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (case citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted); *see* **Chapman-Rolle v. Rolle**, 893 A.2d 770, 774 (Pa. Super. 2006) ("It is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal.") (citation omitted).

In addition, we may not, as Grandmother asks, examine the evidence and reach a conclusion different from that reached by the trial court. *See* **S.M.**, *supra* at 623. Absent an abuse of discretion or an error of law on the part of trial court, it is the sole judge of the credibility of witnesses. *See id.*

Here, the trial court has expressed concern about Father's credibility, but after hearing all the testimony and observing all the witnesses, has rendered a decision based on the totality of the evidence as it observed that evidence. Even if the evidence could possibly lead us to reach a different conclusion, we would not disturb the decision of the trial court. *See id.* Grandmother has failed to demonstrate that the trial court has abused its discretion or committed an error of law and our examination of the record reveals that it supports the trial court's determination to grant Father primary physical and sole legal custody of Child. *See C.R.F., III*, *supra* at 443. Grandmother's second issue is waived and would not merit relief.

In her final issue, Grandmother complains, "The trial court abused its discretion by appointing Kasey Shienvold, Psy.D., to resolve disputes or disagreements between the parties, as the appointment is inconsistent with Pa.[]R.C.P. 1915.11-1." (Grandmother's Brief, at 52; *see id.* at 52-53). We disagree.

Preliminarily, we note that Grandmother has not cited any legal authority, aside from the rule, and has failed to develop an argument in support of her contention that Dr. Shienvold's appointment was an abuse of discretion. (*See id.*). Accordingly, she has waived this issue. *See* Pa.R.A.P. 2101, 2119(a)-(c); *Beshore*, *supra* at 1140.

Moreover, it would not merit relief. Pennsylvania Rule of Civil Procedure 1915.11-1 provides, in pertinent part, "Courts shall not appoint

any other individual [beyond masters and hearing officers] to make decisions or recommendations or alter a custody order in child custody cases." Pa.R.C.P. 1915.11-1. The custody order at issue here provides: "Disputes or disagreements regarding the times, dates and places of custodial exchanges and any matters related to transportation of the Child shall be submitted to Kasey Shienvold, Psy.D., for his assistance in helping the parties to resolve any such differences and disputes." (Order of Custody, 7/29/15, at 2).

Rule 1915.11-1 bars anyone but a master or a hearing officer from making any decision or recommendation that affects a custody order. *See* Pa.R.C.P. 1915.11-1. The provision in the July 29, 2015 custody order requiring the parties to consult Dr. Sheinvold does not empower him to make "decisions or recommendations or alter [the] custody order." *Id.* Dr. Shienvold is charged simply with helping the parties to resolve disputes that might arise within the existing structure of the custody order; he has no power to make a decision or recommendation that affects the order itself. The trial court order's reference to Dr. Scheinvold does not violate the prohibition expressed in Rule 1915.11-1. Grandmother's final issue is without merit.

Accordingly, we affirm the order of the Court of Common Pleas of Dauphin County in this matter entered July 29, 2015, that grants Father

- 13 -

primary physical and sole legal custody of Child and grants Grandmother periods of partial physical custody.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016