J-A25021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

MONIA PIERRE

          Appellee

             v.

NICK ALEXANDER

          Appellant

:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 683 WDA 2021

Appeal from the Order Entered May 12, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD 17-008637-009

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:         **FILED: DECEMBER 21, 2021**

Appellant, Nick Alexander ("Father"), appeals from the order entered in the Allegheny County Court of Common Pleas, which awarded Appellee, Monia Pierre ("Mother") primary physical custody of the parties' minor child ("Child"). We affirm.

The relevant facts and procedural history of this appeal are as follows. Mother and Father met in Florida in 2009.  The parties never married.  Child was born in July 2011.  Five months later, the parties and Child moved to Pennsylvania because Father received a favorable job offer.  In 2015, the parties separated.

The trial court opinion fully and correctly set forth the remaining

_____

[*] Retired Senior Judge assigned to the Superior Court.

procedural history of this case:

> On August 3, 2017, Father filed a Complaint for Custody, seeking shared legal and physical custody. On January 23, 2018, Mother presented a Petition for Emergency Custody of Child alleging Father took Child out of state without Mother's consent, withheld the child for thirteen days, and had the child miss 3 days of school. On January 23, 2018, [the trial c]ourt ordered that Mother and Father shall share legal custody of Child, Child shall be primarily with Mother and partially with Father as the parties agree, that neither party shall remove the Child from Allegheny County without the other [party's] written consent, and the parties shall proceed through Generations.

> On February 13, 2018, Father presented a Motion for Special Relief requesting [that the trial c]ourt grant him shared legal and physical custody pending the conciliation with the Domestic Relations Officer. On February 13, 2018, [the trial c]ourt ordered that the parties would share legal custody of Child, neither party would change the visitation schedule without the other party's consent, neither party shall remove Child from Allegheny County without the other party's written consent, and the parties would proceed through Generations.

> On March 16, 2018, Father presented a Motion for Special Relief seeking a modification of the order to grant not only shared legal custody but also shared physical custody. On March 16, 2018, [the trial c]ourt granted an interim court order which provided as follows: the Child was with Mother every Monday and Tuesday, and every other weekend; the Child was with Father every Wednesday and Thursday and every other weekend; the parties were to use Our Family Wizard to communicate regarding co-parenting matters; and neither party was permitted to leave Pennsylvania with Child without prior written consent of the other parent.

> After conciliation, on April 4, 2018, … the parties consented and agreed to an Interim Order of Court that provided the following: the March 16, 2018 order shall remain in full force and effect with modifications; the parties would give at least 48-hour notice if either party wishes to remove the party from Allegheny County for an overnight during their

custodial time.

On May 16, 2018, Father filed a Notice of Proposed Relocation to relocate with Child to Buford, Georgia. On May 18, 2018, Mother filed a Counter Affidavit Regarding Relocation objecting to Father's proposed relocation. On May 18, 2018, Father filed a Motion for Special Relief requesting the court consolidate the relocation and the judicial conciliation on Father's Complaint for Custody and schedule a hearing on both matters as soon as possible. On May 18, 2018, [the trial c]ourt ordered that an evidentiary hearing … regarding Father's relocation petition, coupled with the judicial conciliation be heard on July 27, 2018. On July 27, 2018, the first day of the hearing on Father's request to relocate with the Child and his Complaint for Custody was held. On August 9, 2018, the parties consented and agreed to an Order that a second trial date was not needed, and that Child did not need to testify regarding the relocation matter.

On October 6, 2018, [the trial c]ourt issued an Order of Court regarding Father's request to relocate with the Child and his Complaint for Custody. The October 6, 2018 Order provided, among other things, the following: Father's Petition to Relocate with the Child was denied[1]; Mother and Father would share legal custody of the Child; the Child would attend school in Mother's school district, West Allegheny; during the school year Father was entitled [to] exercise custody of the Child in Allegheny County for any weekend so long as Father gave Mother not less than 30 days' notice; Father was entitled to exercise custody of the Child in Pennsylvania or Georgia during any long weekend where the Child did not have school on a Friday or Monday so long as Father gave Mother 30 days' notice; the parties would provide the court a proposed summer schedule within fourteen days of the Order; if the parties did not provide this court with a proposed summer schedule, then the court would issue a summer schedule; additionally the Child would be with Father as the parties agreed; the Child would alternate her Christmas, Thanksgiving, and Easter breaks with Mother and Father every other year; Mother and Father were entitled to two weeks of vacation with the Child; and the parent the Child was not with would have a video call with the Child within the half-hour before bedtime. On June

- 3 -

26, 2019, after the parties were unable to agree on a summer schedule and argument on Father's Motion to Adopt his Proposed Summer Schedule, [the trial c]ourt issued [an] Order that provided the following: the Child would be with Father for four weeks during the summer; in even years the Child shall be with Father for the four full weeks preceding and up to July 25th (so the Child would be with Father for her birthday); and in odd years the Child would be with Father for the four weeks preceding and up to July 23rd (so the Child could be with Mother for her birthday).

[1] Father had already relocated to Georgia.

On March 13, 2020, Mother filed a Petition to Modify the Custody Order and Notice of Proposed Relocation. On August 31, 2020 Father's Counter-Affidavit which was dated April 8, 2020 was filed and indicated that Father objected to the relocation and was seeking an expedited conciliation. On September 10, 2020, after Father failed to appear for the expedited conciliation on Mother's request to relocate with the child, [the trial c]ourt issued an Interim Order of Court which provided the following: the October 6, 2018 and June 26, 2019 Orders of Court shall remain in full force and effect with modifications; pending further order of court, Mother may relocate with the Child to Winter Haven, Florida; Father shall file a *Praecipe* (Request) for the court to schedule a hearing within 60 days of this Order; and if Father failed to file a *praecipe* for a hearing within 60 days, then the Order would become a Final Order. On November 24, 2020 Father filed a Complaint to Modify Custody, and an Emergency Petition for Special Relief Custody requesting the Child be with Father for Thanksgiving break and Mother cooperate with Father to make travel arrangements for the Child for the Thanksgiving break. On November 24, 2020, [the trial c]ourt issued an Order that provided the following: the parties shall strictly follow the October [6, 2018] Order of Court; Mother shall cooperate with Father in making travel arrangements for the Child; after Father failed to appear for the expedited conciliation on Mother's request to relocate with the Child, Mother was permitted to reside in Winter Haven, Florida pending further order of court; and the parties would receive a scheduling order on Mother's Petition to Modify and relocate by separate order. On December 7, 2020 Mother filed a Counterclaim for Primary

- 4 -

Custody. On January 11, 2021 and April 9, 2021 [the trial] court held a trial on Mother and Father's Petitions to Modify the Custody Order.[1] On May 12, 2021 [the trial] court issued an Order of Court on Mother and Father's Petitions to Modify the Custody Order which provided, among other things, the following: Mother and Father would share legal custody of the Child; the Child would attend school in Mother's school district; during the school year Father shall be entitled to exercise custody of the child in Ocala, Florida for any weekend so long as Father gives Mother 30 days' notice; Father also is entitled to exercise custody of the Child in Florida or Georgia during any long weekend where the Child does not have school on a Monday or Friday so long as Father gives Mother 30 days' notice; during the summer the Child shall be with Mother for a week after school ends, a week before school begins, and two weeks in the middle, and with Father for the remainder of the summer; the Child shall be with Mother for her birthday in odd years and with Father in even years; additionally the Child shall be with Father as the parties agree; the Child shall alternate her Christmas, Thanksgiving, and Spring breaks with Mother and Father; the Child shall be with Mother on Mother's Day weekend and Father on Father's Day weekend; the Child shall have a video call with the parent she is not with in the half-hour before bedtime; and the parties shall communicate via email regarding co-parenting matters except in a *bona fide* emergency.

(Trial Court Opinion, filed July 9, 2021, at 2-6). Father timely filed a notice of appeal and concise statement of errors on June 8, 2021.

Father now raises three issues for our review:

Whether the trial court's analysis of the sixteen (16) custody factors set forth in 23 Pa.C.S.A. § 5328(a) was unreasonable in light of the sustainable findings of the trial court.

---

[1] When the trial commenced, the parties stipulated that Father was no longer objecting to Mother's relocation to Florida. (*See* N.T. Trial, 1/11/21, at 3). Rather, Father was proceeding on his request for custody modification only. (*Id.* at 4).

Whether the trial court's mistaken analysis of the ten (10) relocation factors set forth in 23 Pa.C.S.A. § 5337(h) prejudiced the trial court's subsequent analysis of the sixteen (16) custody factors set forth in 23 Pa.C.S.A. § 5328(a).

Whether the trial court prejudiced the parties by causing an undue delay that violated due process and Pa.R.C.P. 1915.4.

(Father's Brief at 3).

In his first issue, Father contends that the court's analysis for three of the statutory custody factors was unsupported by the evidence adduced at trial. Regarding which party is more likely to encourage and permit frequent and continuing contact between Child and the other party, Father asserts that the court "placed unreasonable weight on Father's 'withholding' of Child" during the COVID-19 pandemic. (*Id.* at 11). Father claims that he and Mother mutually agreed that Father "should keep Child for an extended period" during the pandemic, and it was unreasonable for the court to characterize Father's action as withholding Child from Mother. (*Id.*) On another occasion, Father insists that he was unable to bring Child to a custody exchange due to his attendance at his own father's funeral. Father submits that these incidents pale in comparison to Mother's own behavior, which included "frequent and abrupt moves about the State of Florida with no notice nor consideration to Father's custodial rights." (*Id.*) Likewise, Father complains that Mother consistently interferes with the court-ordered telephone contact between Child and Father.

Regarding the availability of extended family, Father argues that the

court "improperly characterized Father's relocation in a negative manner while commending Mother's similar relocation." (*Id.* at 14). Father emphasizes that his move to Georgia placed him closer to his extended family, including Child's half-brother. In light of these additional familial resources, Father claims that the court improperly criticized his move as creating instability for Child.

Regarding which party is more likely to attend to Child's daily needs, Father again submits that the court used his move to Georgia against him. Father disputes the court's conclusion that his relocation made it impossible for him to attend to Child's daily needs. Instead, Father relies on the evidence he presented at trial, which established that: 1) Father is the primary actor attempting to help Child obtain speech therapy; 2) Child is "dirty, unkept, and with rashes" when Mother delivers her to custody exchanges; and 3) Mother places Child in danger by living in a residence she shares with family members, some of whom have "suspected ties to criminal and gang activity." (*Id.* at 16, 17). Based upon the foregoing, Father concludes the court's custody decision was unsupported by the evidence. We disagree.

The following principles apply to our review of a custody order:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we

- 7 -

are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 457-58 (Pa.Super. 2021) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018)).

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)).

The Child Custody Act provides:

### § 5328. Factors to consider when awarding custody

**(a)** **Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 8 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to

protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

> (14)  The history of drug or alcohol abuse of a party or member of a party's household.

> (15)  The mental and physical condition of a party or member of a party's household.

> (16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further:

> The parties cannot dictate the amount of weight the trial court places on the evidence.  Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting **S.M. v. J.M.**, 811 A.2d 621, 623 (Pa.Super. 2002)).

Instantly, the trial court thoroughly explained its decision-making process for each of the disputed custody factors.  Regarding which party is more likely to encourage and permit frequent and continuing contact between Child and the other party, the court found that Child "went with Father in March of 2020 for Spring Break and Father withheld the child from returning to Mother."  (Order, entered 5/12/21, at 8).  Here, Mother's testimony supports the court's finding.  Specifically, Mother testified that a custody exchange occurred in March 2020.  (**See** N.T. Trial, 1/11/21, at 143).  While

Child was with Father, Mother planned to travel. (*Id.*) Mother further explained:

> [Child] would only be with her dad for the timeframe that I was going to be gone, and I was—[Father] was going to bring her back. That's what [Father] had said, but when I asked [Father] to bring [Child] back, [Father] didn't want to bring [Child] back. [Father] said it's COVID.

(*Id.* at 144). Upon learning more about the COVID-19 pandemic, Mother stopped insisting that Father return Child to Mother's custody. Nevertheless, Mother's testimony demonstrates that the parties did not reach an understanding about this scheduled exchange until after Father withheld Child.

Mother also testified about another incident where the parties were supposed to exchange custody at the airport in Orlando. (*Id.* at 138-39). Mother explained to Father that she had planned a small birthday party for Child after the exchange. Despite the parties scheduling the exchange to occur on July 23rd, Father did not bring Child to the airport until July 25th. Mother attempted to explain Father's actions stating, "[T]hat's just him being him." (*Id.* at 140).[2]

Regarding the availability of extended family, the court did not find that

---

[2] To the extent Father also argues that Mother interferes with Child's court-ordered telephone contact, Father testified that he contacts Child once a day on her cell phone. (*See* N.T. Trial, 1/11/21, at 76). Although Father also claimed that Mother stays in the room with Child during these phone calls, Mother expressly denied this allegation. (*Id.* at 142). Mother also denied taking any other actions to interfere with Child's telephone contact with Father. (*Id.* at 137).

this factor favored either party. Instead, the court noted: "The evidence presented at trial established that both Mother and Father have extended family available to assist them in caring for the child." (Order, entered 5/12/21, at 9). Father now emphasizes that his relocation to Georgia brought him closer to extended family, but the court characterized Father's relocation in a negative manner. While our review of the record confirms that the court did not view the parties' relocations in the same light, the court provided adequate reasoning for differentiating between the relocations:

> [T]he facts and circumstances surrounding Mother and Father's respective moves are not the same. Mother and Father lived together in Florida and Mother got pregnant. Approximately in December of 2011, Mother, Father, and the Child moved from Florida to Pittsburgh because of a better job opportunity for Father when the Child was 5 months old. In 2018 Father moved to Georgia with his Wife (they were not married when Father moved). In October of 2020 Mother returned to Florida with her immediate family. There is no evidence of record that in 2018 when Father relocated to Georgia that he had any extended family available in Georgia except for his girlfriend at the time who he ultimately married. The evidence of record clearly established that Mother was left alone with the Child in Allegheny County, and in October of 2020 she returned to Florida where she was from and where she had a significant amount of immediate and extended family available.

(Trial Court Opinion at 10-11) (internal record citations omitted).

Regarding which party is more likely to attend to Child's daily needs, the court also focused on Father's decision to relocate:

> Father moved away from the child in 2018 making it impossible for him to attend to the daily needs of the child. Mother continued to attend to the daily needs of the child from 2018 to the present. Father alleges that Mother does

- 12 -

> not attend to the educational needs of the child specifically regarding moving the child's school and regarding speech therapy. The evidence is contrary to Father's allegation. Any change in school made by Mother was necessary. And Mother has been engaged and attentive to the child's speech needs.

(Order, entered 5/12/21, at 10). Again, the record supports the court's findings. Mother testified that Child's new school was evaluating her speech therapy needs. (*See* N.T. Trial, 1/11/21, at 136). Although Mother does not believe that Child needs speech therapy, Mother testified that she would agree to therapy if the evaluation indicated that Child needed it. (*Id.* at 137).

Likewise, the record belies Father's assertions about Child's hygiene. Mother testified that Child suffers from eczema, and doctors advised her that Child would exacerbate the condition if she bathed every day. (*Id.* at 149-50). Further, doctors have prescribed medication for Child's condition. (*Id.* at 150). The medicines, however, do not always work, and Child appears to have a rash when she repeatedly scratches the affected areas. (*Id.*)

Mother also provided ample testimony about her residence and its occupants, which the court summarized as follows:

> The evidence of record established the following: Mother resides with her immediate and extended family who serve as a support system for Mother; Mother and the Child have their own room in the home; the Child has a strong bond with her extended family and spends significant quality time with her cousins who are close in age; the Child feels safe with her extended family and has never felt unsafe with any members of her extended family in her household; and the record is devoid of any evidence that a maternal uncle has

ties to criminal and gang activity.[3]

(Trial Court Opinion at 13) (internal record citations omitted).   Mother and

Child's testimony supports the court's findings about their current living

situation.  (*See* N.T. Trial, 1/11/21, at 127-29; N.T. Trial, 4/9/21, at 13-14,

29-30).

In summary, Father essentially asks this Court to reweigh certain

Section 5328(a) factors in his favor.  However, we have carefully reviewed the

record in this case, and it supports the trial court's findings.  *See E.C.S.,*

*supra*.   Because we cannot say that the court abused its discretion in

assigning weight to these factors, Father is not entitled to relief on his first

claim.  *Id.*

In his second issue, Father asserts that the custody order included an

analysis of the statutory relocation factors even though Father dropped his

objection to Mother's move to Florida.   Father criticizes language from the

court's relocation analysis, wherein it stated that "Father was attempting to

relitigate his request to relocate the child to Georgia…."  (Father's Brief at 18)

(quoting Order, entered 5/12/21, at 6).  Father insists that "the trial court's

_____

[3] Father testified that one of Mother's brothers was involved in "drug-related activity," including a shooting.  (*See* N.T. Trial, 1/11/21, at 36-37).  Father attempted to corroborate this testimony by seeking admission of a 2017 newspaper article about the shooting.  Mother's counsel initially objected to the admission of this article, but counsel subsequently withdrew the objection. (*Id.* at 39, 116).   Thereafter, Child's testimony established that she and mother did not actually live with the relative who was mentioned in the newspaper article.  (*See* N.T. Trial, 4/9/21, at 22).

characterization of Father's efforts as an attempt to relitigate a failed request for relocation is both mistaken and prejudicial." (*Id.* at 19). Moreover, Father maintains that the court's analysis of the statutory custody factors "repeatedly refers to its analysis of the relocation factors which are highly prejudicial against Father." (*Id.*) Under these circumstances, Father concludes that the court abused its discretion by rendering a custody decision that was the product of prejudice and bias. We disagree.

"Relocation" is defined as, "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). "The legislature enacted section 5337 specifically to deal with relocation matters." *D.K. v. S.P.K.*, 102 A.3d 467, 472 (Pa.Super. 2014). Section 5337 provides, in relevant part, as follows:

**§ 5337.  Relocation**

\*    \*    \*

**(h)    Relocation    factors.—**In    determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)    The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)    The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

- 15 -

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

This Court has not held "that a trial court cannot or should not consider the factors of section 5337(h) in a case where a request for modification of the custody order involves the change of residence of the child to a significantly distant location." **D.K., supra** at 474. This Court has also noted,

"[s]everal of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." *Id.* at 476-77.

Instantly, the court acknowledged that it mistakenly analyzed the Section 5337(h) factors after Father withdrew his objection to Mother's relocation. (*See* Trial Court Opinion at 17). The court insisted, however, that such analysis "did not prejudice Father in any way as to the court determining the best interest of the child by considering all relevant factors set forth in 23 Pa.C.S.A. § 5328(a)." (*Id.*) We agree with this assertion. Regardless of whether Father objected to Mother's relocation, the court was left to decide whether Child should primarily reside with Father in Georgia or Mother in Florida. Either option represented a change to a new residence that was significantly distant from Child's prior home in Pittsburgh. *See D.K., supra*. Additionally, many of the Section 5337(h) factors overlapped with the custody factors of Section 5328(a) and were part and parcel of any "best interests" analysis. *Id.* Under the unique circumstances of this case, we conclude that the court's additional evaluation of the Section 5337(h) factors did not amount to an abuse of discretion. *See E.C.S., supra*.

In his third issue, Father emphasizes that the custody trial commenced on January 11, 2021, but the court did not conduct an *in camera* interview with Child until April 9, 2021. Father posits that the delay between the start of trial and the *in camera* interview violated Pa.R.C.P. 1915.4(c), which requires that a trial be concluded within forty-five (45) days. Father argues

that the court compounded its error by failing to enter its decision within fifteen (15) days of the date when trial concluded. Father insists that the court's noncompliance with Rule 1915.4 deprived him of a constitutional right without due process of law. Specifically, Father maintains that the delays in this case deprived him of the right to make decisions concerning the care and control of Child. Father concludes that he suffered prejudice due to the court's violation of his due process rights. We disagree.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Interest of M.Y.C.**, 230 A.3d 500, 509 n.13 (Pa.Super. 2020) (quoting **Interest of S.L.**, 202 A.3d 723, 729 (Pa.Super. 2019)). "[T]he right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause." **Id.** at 510 (quoting **In re D.C.D.**, 629 Pa. 325, 348-49, 105 A.3d 662, 676 (2014)). "Accordingly, any infringement of that right by the state must be reviewed by this Court pursuant to a strict scrutiny analysis, determining whether the infringement is narrowly tailored to effectuate a compelling state interest." **D.C.D., supra** at 349, 105 A.3d at 676.

Additionally, Rule 1915.4 provides, in pertinent part, as follows:

**Rule 1915.4.  Prompt Disposition of Custody Cases**

\* \* \*

**(c)    Trial.** Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials

- 18 -

and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

**(d)   Prompt Decisions.**   The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension.   In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Pa.R.C.P. 1915.4(c), (d).

Instantly, the record belies Father's claim that the trial delays resulted in the deprivation of his right to make decisions concerning Child's care.

Between January 11, 2021 and April 9, 2021 as well as between April 9, 2021 and May 12, 2021, the October 6, 2018 and June 26, 2019 Orders of Court regarding custody of the child were in full force and effect.   Pursuant to those orders, Mother and Father shared legal custody the child, and physical custody was as follows: the child would continue to reside primarily with Mother in Allegheny County; the child would be with Father, who relocated to Buford, Georgia from Allegheny County, during the school year on any weekend in Allegheny County as well as in Pennsylvania or Georgia during any long weekend the child did not have school on a Friday or Monday so long as Father gave Mother notice; during the summer for four full weeks including on the child's birthday every other year; and with Father every other year on Christmas break, Thanksgiving break, and Easter/Spring break.   Furthermore, between January 11, 2021 and April 9, 2021 Father continued to exercise his custody pursuant to said orders and the child continued to spend time with her Father.

(Trial Court Opinion at 16) (internal record citations omitted).

We do not condone the court's failure to comply with the timeliness requirements of Rule 1915.4.   Father, however, does not cite any relevant

- 19 -

authority to support his claim that noncompliance with Rule 1915.4 resulted in the deprivation of a constitutional right without due process.[4] *See M.Y.C., supra*. On this record, Father is not entitled to relief on his third claim. Accordingly, we affirm the custody order.

Order affirmed. Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2021

---

[4] Father cites *In re Adoption of T.M.F.*, 573 A.2d 1035, 1043 (Pa.Super. 1990), *appeal denied*, 527 Pa. 634, 592 A.2d 1301 (1990), for the following proposition:

> The Supreme Court recognizes a psychological determinate in child custody proceedings having to do with the child's sense of time, which is measured by a different and faster clock than an adults, and the fact is that children evolve, grow, acquire new attachments and have differing needs which cannot be sublimated to the niceties of legal proceedings and the sometime dubious vagaries of the attacks on a decree.

Significantly, *Adoption of T.M.F.* is distinguishable, as it dealt with constitutional issues in the context of a termination of parental rights proceeding.